127 So.2d 107 (1960)
STATE of Florida ex rel. The FLORIDA BAR, Complainant,
v.
H.E. OXFORD, Respondent.
Supreme Court of Florida.
November 30, 1960.
Rehearing Denied March 20, 1961.
David W. Hedrick, Orlando, for The Florida Bar, complainant.
J. Hardin Peterson, Jr., Lakeland, for respondent.
Cecil B. Smith, Lakeland, amicus curiae.
PER CURIAM.
This is a disciplinary proceeding instituted June 7, 1956, against respondent, H.E. Oxford, an attorney of Lakeland, Florida, by G. David Parrish on part of The Florida Bar. On the date last named Parrish summonsed certain employees of Oxford to appear before him for examination, the purpose of which was not disclosed. Almost a year following the Parrish examination, Oxford was notified by the Board of Governors of The Florida Bar sitting as a Special Grievance Committee to attend a second examination to be held April 13, 1957.
At both said examinations the secretary for Oxford, hereinafter referred to as the "key witness," gave testimony completely exonerating him [Oxford] of the unprofessional acts charged against him of which we shall have more to say later. About fifteen months following the Special Grievance Committee examination, the key witness was discharged from Oxford's employment.
Less than three months following the discharge of the key witness, the Grievance Committee of the Tenth Judicial Circuit gave notice of a hearing to be held November 19, 1958. At this hearing the key witness became the main witness for complainant, and repudiated in toto the testimony given by her at the two prior hearings in behalf of respondent.
May 11, 1959, approximately six months after the third and last hearing, and three years after the first hearing, The Florida Bar filed a complaint against Oxford, charging him with unprofessional conduct from April 1, 1954, to July 1, 1958, the specifications in said complaint being as follows:
*108 (a) That the respondent caused pleadings to be prepared and filed on behalf of the plaintiff and defendant in thirty-nine specified divorce cases.
(b) That the respondent acted as bondsman for certain persons charged with offenses in the municipal court.
(c) That the respondent caused a final decree to be prepared and entered in two cases wherein the pleadings set forth that the plaintiff and the plaintiff's witnesses had appeared before the court and testified, when, in fact, the plaintiff and the plaintiff's witnesses had not appeared before the said court.
(d) That the respondent caused to be prepared and filed pleadings which were false and untrue in the case of Stickney v. Stickney.
(e) That the respondent, while attorney for the plaintiff in the case of Jones v. Jones, caused to be prepared and filed a counterclaim in behalf of the defendant; it was alleged that the name of Charles H. Chastain, an associate of the respondent, was signed to that counterclaim at the direction of the respondent without the knowledge or consent of the said Charles H. Chastain.
(f) That the respondent conspired with his secretary to give false testimony before the Board of Governors in April of 1957, concerning the preparation and filing of the counterclaim in the case of Jones v. Jones, referred to in Par. (e) above.
(g) That respondent caused pleadings to be filed in divorce cases referred to him by a Washington, D.C., attorney which represented that the plaintiffs in such proceedings were residents of the State of Florida while they were actually residents of other states, which facts were known to the respondent, and the respondent caused a witness to give false testimony in corroboration of the residence of such plaintiffs.
(h) That the respondent represented to the court that his client was a resident of the State of Florida in the case of Fredericks v. Fredericks and other cases.
(i) That respondent swore falsely before the Board of Governors concerning the preparation of the counterclaim in the case of Jones v. Jones referred to in Par. (e) above.
Each and all of these charges have to do with uncontested divorce cases. The respondent has elected to paraphrase and treat them separately. The second charge, specification (b), is the only one raising a question of law. We, therefore, elect to treat it separately. Since all the other charges involve questions of fact, they will be treated together.
As to charge one, preparing and filing pleadings for plaintiff and defendant in divorce cases, the Referee and the Board of Governors exonerated the respondent of any blame because that had been the general practice in the Tenth Circuit for many years, and to hold otherwise as to respondent would be unfair. Since the point took this turn, introduction of evidence was unnecessary though it is shown to have enlarged the record inordinately.
Second Point [Specification (b)].
Did the act of depositing cash to secure the release from custody of persons charged with offenses in a municipal court constitute suretyship under a bond or such a breach of ethics as to warrant disbarment?
This is the only legal point in the case. It was not necessary to labor it or to take testimony in support of or to explain it. Respondent frankly admitted that in years past he had practiced before the police court in Lakeland and in such cases he had deposited with that court in cash or check the amount required to secure the release of any client adjudicated guilty of breaking municipal laws or regulations. It is common knowledge that formal trials are rarely had for such infractions. If defendant has a defense, he secures a lawyer to handle that. At any rate, when the proceeding is concluded *109 and defendant has nothing to pay his fine, which is generally the case, his lawyer puts up the money to secure it or he may be released in the custody of his lawyer. This is common police court procedure. Section 903.07, Florida Statutes, F.S.A., provides: "No attorney at law and no official authorized to admit to bail, nor any state, or county officer shall become surety on any undertaking." Section 454.20, Florida Statutes, F.S.A., is pertinent and is as follows: "No attorney shall become surety on the official bond of any state, county, or municipal officer of this state, nor surety on any bond of a client in judicial proceedings."
Canon 10, Canons of Professional Ethics, 31 F.S.A., provides that "the lawyer should not purchase any interest in the subject matter of the litigation which he is conducting." Canon 10 is in effect much the same as § 454.20, Florida Statutes, F.S.A., both of which, as well as § 903.07, Florida Statutes, F.S.A., may be comprehended in Rule 30, governing the conduct of attorneys in Florida, 31 F.S.A., which provides that "No person licensed to practice law in the courts of the State of Florida shall be guilty of any conduct in the practice of his profession unbecoming an attorney at law."
"Any conduct in the practice of his profession unbecoming an attorney at law," touches every aspect of the law practice and certainly imposes a high standard of moral and professional conduct on every lawyer. Such a standard in other words as inspires confidence in the profession and every member of it personally.
If depositing cash or check with the police department in an amount required to secure the release of one adjudicated guilty of breaking the municipal law, or if it amounts to "becoming surety on any obligation" or becoming "surety on any bond of a client in judicial proceedings," or becoming "surety on the bond of any state, county or municipal officer of this state" or if it could be said that it amounts to purchasing "any interest in the subject matter of the litigation which he is conducting," then respondent might be guilty of some breach of the law or the Code of Ethics as charged.
What respondent did in this case amounted to nothing more than payment of one's fine or the loan of funds to do so. In so doing, the lawyer did not secure any interest in the litigation; he did not become surety on any bond or any undertaking. It may be that one could be bound in such a way as to amount to suretyship on an obligation but nothing done here is shown to have done so. In fact, what was done in this case was nothing more than an accommodation. It is common knowledge that no lawyer should become financially involved in any litigation which he is connected with. Love v. Sheffelin, 7 Fla. 40. There is no showing whatever that respondent was guilty of violating any of the statutes or provisions of the Code of Ethics. Nor did his act of depositing cash to secure the release from custody of persons charged with offenses in a municipal court constitute suretyship under a bond or such a breach of ethics as to warrant disbarment.
Points three, four, five, six, seven, eight and nine charge irregularity in the preparation and filing of pleadings in certain divorce causes. It is charged that some of these pleadings were false and untrue; in others it is alleged that the witnesses appeared before the court when in fact they did not do so; in some it is charged that the names of "other counsel" were signed to said pleadings without their consent; in some it is alleged that respondent conspired with the key witness to give false testimony before the Board of Governors; in others it is charged that plaintiffs were residents of the State of Florida when in fact they were residents of other states and in still others it is alleged that respondent swore falsely before the Board of Governors concerning the preparation of counterclaims in certain cases.
To be more specific, it is shown that the third, fourth and fifth points have to do *110 with the sufficiency of the evidence to support the conclusion of the referee that respondent deliberately caused false recitals to appear in the final decree; that respondent caused untrue pleadings to be filed in Stickney v. Stickney or that he [respondent] caused a counterclaim to be forged and filed in a named divorce case.
The evidence relied on in support of these points was in the main that of the "key witness." It has to do with what took place in two divorce cases, both represented by counsel. The bone of contention was a property settlement which was concluded. This appears to have been satisfactory to both parties and when accomplished all other controversies seem to have vanished from the picture. It is contended that the final decree was entered without a hearing and appearance of counsel, but the final decree recites that hearings, appearance of counsel and witnesses were had in the Tempane case. The Referee stated he could not tell whether a hearing was had. There is no suggestion of fraud, breach of confidence or overreaching and the parties are not here complaining. It seems apparent that the decree may have been secured by careless or loose practice but unintentional on the part of attorneys or parties to the suit.
The testimony in support of the alleged forged counterclaim referred to in the fifth point fanned out about as thin as it did in support of the fourth point and was supported only by the testimony of the "key witness," who appeared in all three examinations heretofore detailed and testified at the instance of complainant. In her first appearance she testified that respondent knew nothing about the counterclaim in question. She recounted how she had been harassed by the Welfare Department and Mrs. Jones and the manner in which she prepared, forged and filed the counterclaim. She further testified that respondent put an end to the practice when told of the improper conduct of the key witness in the matter. It should be noted that this testimony was given at a time before the animosity and bitterness of the key witness for respondent had materialized. Her testimony at the Special Grievance Committee hearing was not materially different. In her testimony before the Grievance Committee of the Tenth Judicial Circuit the key witness completely reversed her story and charged respondent with having directed her in all her improper activities that were laid against respondent.
At the taking of the testimony before the Grievance Committee of the Tenth Judicial Circuit, the Referee observed in his report that the key witness in her condemnation of respondent "Still lies about some things." The Referee further characterized the key witness in the following language:
"The Referee recognizes that the witness so attacked is not a lovely person. She drinks too much; her personal moral life is a shambles, and she fibs about it in some details, although admitting the truth in broad outline. She is, in fact, a disintegrated personality who faces a bleak future living with herself."
In his report the Referee volunteered the following comment about the credibility of this witness:
"The former secretary of the respondent who was the key witness against him still lies about some things."
The Referee further commented about the vindictive attitude of the key witness toward respondent after her discharge from his service:
"She exaggerates and colors her story because of her animosity to the respondent."
In the attempt to corroborate the testimony of the key witness the record reveals instance after instance in which her testimony was stripped of veracity.
The sixth point charges that respondent conspired with the key witness to give false testimony in the Jones divorce case discussed in point five but evidence showed this *111 charge to be as devoid of merit as the fifth charge relative to forged counterclaim.
No more damaging charge could have been laid against an attorney and to neutralize it and other charges every circuit judge and former circuit judge in the Tenth Judicial Circuit, viz., Judges D.O. Rogers, William K. Love, Gunter Stephenson, Clifton M. Kelley, H.C. Petteway and C.V. McClurg, were called as witnesses and testified that respondent was an honest, honorable, thorough and conscientious attorney. Judge R.H. Amidon, Judge of the Criminal Court of Record, Polk County, former Municipal Court Judge E.M. Knight and Judge James S. Welch, present Municipal Court Judge, were also called as witnesses and testified as to the good character, reputation and dependability of the respondent. B.G. Langston, A. Roy Surles, Jr., Franklin Garner, Gordon Petteway, Walter W. Manley, Lawton W. Chiles, Jr., R. Phillip Haddock, Robert F. Miller, Monte J. Tillis, Jr., Frank G. Jones, Marvin B. Woods, Herbert N. Casebier, John H. Dewell, D.M. Martin, J. Hardin Peterson, Sr., Frank C. Stanley, Jr., Gordon MacCalla, Ray Clements, Cecil B. Smith, W. Wallace Shafer, all prominent attorneys, and D.H. Sloan, Jr., Clerk of the Circuit Court of Polk County all testified to respondent's good character, good reputation, integrity and fidelity to duty.
In addition to the foregoing voluntary testimonials of the judges and lawyers of the Tenth Judicial Circuit approving the character, reputation and standing of respondent as a lawyer, twenty-five active members of the bar of the Tenth Circuit prepared and filed an amicus curiae brief in this court wherein they challenged the proposal to disbar respondent "on findings of conduct admitted to be true in some and allegedly proven by questionable evidence in other instances."
In view of such an array of support for the good character, good reputation, dependability, integrity and fidelity to duty on the part of respondent, none of which is contradicted by anyone but the key witness, we see no ground whatever on which we would be authorized to disbar him. We think the estimate of the testimony and integrity of the key witness by the Referee pointed out herein completely discredits her testimony. No lawyer should be disbarred on discredited evidence.
In consideration of the charges against respondent, we have not overlooked the alleged careless manner in which respondent, the master and the chancellor treated pleadings, to wit: (1) The client did not sign the complaint, but he signed a separate piece of paper which was attached to the complaint; (2) client and fictitious witnesses signed undated pre-typed testimony which was signed the first time the witness came to the office; (3) the master's report was never dated. It consisted of the front page and evidence as pointed out. The master knew little about the case, never saw the files or the witnesses except in a perfunctory manner. (4) The judge paid little or no attention to the case, never had the case files before him and signed any decree proffered by respondent.
We find no dependable support in the record for these charges; in fact they have no support except the testimony of the key witness who the Referee said "still lies about some things," "exaggerates and colors her story because of her animosity to him [respondent]." It would take a much more credible type of evidence than this to convince us that the chancellor, the master and counsel were parties to such a protracted arrangement by which uncontested divorce cases could be so handled. It is unthinkable that any set of lawyers or judges could have indulged in such practice. The final decrees flatly contradict these charges.
This court is committed to the doctrine that disbarment is the extreme measure of discipline and should be resorted to only in cases where the lawyer demonstrates an attitude or course of conduct wholly inconsistent with approved professional standards. *112 State ex rel. The Florida Bar v. Murrell, Fla. 1954, 74 So.2d 221.
Other charges, such as sloppy preparation of pleadings by lawyers, shoddy ways on the part of masters in conducting hearings and judges conducting chancery causes in lawyers' offices instead of the court house, are complained of. Such practice is unbecoming any lawyer but if it exists it can be cured by a more rigid observance of procedural requirements defined in the rules. Responsibility for correcting these infractions devolves on lawyers and judges. As a rule, lawyers will not impose on themselves any higher standard of professional conduct than is borne by the judge before whom they practice, so it behooves the judge to guard well his personal deportment and to conduct every trial or proceeding by the most approved standards of professional integrity; in so doing, he will set the tone of his circuit and will inspire confidence in our system of administering justice. Courtesy, accuracy, refinement and good manners are always in order in the court room. It is the last place for sloppiness, carelessness, indifference and hit-or-miss practices.
These questions are not discussed further because it would be more of the same kind and would serve no useful purpose.
For the reasons stated herein and for others that could be as appropriately included, we find no basis on which we would be willing to disbar respondent. The most that he is shown to have been guilty of was that in certain divorce cases his office caused to be prepared and filed pleadings on behalf of plaintiff and defendant and in certain uncontested divorce cases final decrees were secured by careless or loose practice though devoid of any showing of corrupt means. This practice appears to have been indulged in by respondent and the bar of the circuit generally but others are not before us. Under the circumstances the most that this infraction deserves is a reprimand.
It is appropriate to call attention to the fact that this proceeding was instituted June 7, 1956, more than four years ago. Disciplinary proceedings should be handled with dispatch. While they are pending, the defendant is suspended in limbo and should he expire while so suspended, it would be a tragedy.
It is accordingly ordered and decreed that respondent having been proven guilty of this charge, he is adjudged guilty and it is the judgment of this court that he be reprimanded.
TERRELL, HOBSON, DREW and THORNAL, JJ., concur.
THOMAS, C.J., agrees to judgment.