174 So.2d 398 (1965)
THE FLORIDA BAR, Complainant,
v.
Harry E. KING, Respondent.
No. 33891.
Supreme Court of Florida.
April 21, 1965.
Miller, Cone, Owen, Wagner & Nugent, West Palm Beach, for The Florida Bar, complainant.
Chester Bedell, Jacksonville, for respondent.
*399 PER CURIAM.
On March 3, 1964, The Florida Bar filed a complaint against the respondent, Harry E. King, charging him with the following acts of misconduct which we quote from the complaint:
"3. The respondent, Harry E. King, did knowingly and wilfully solicit, procure and cause one James L. Busbee and one Rollie Arnold to commit perjury in testifying before the Honorable William D. Hopkins, Acting State Attorney for the Tenth Judicial Circuit, in and for Polk County, Florida, on the 29th day of February, 1956, that is to say respondent caused or procured the said James L. Busbee and Rollie Arnold to corruptly and falsely testify, under lawful oath, that they were present and did witness and observe a meeting between one Boone D. Tillett, Jr., and respondent, Harry E. King, on the 4th day of February, 1956, at or near Babson Park, Polk County, Florida, at which time respondent transferred $10,000.00 good and lawful currency of the United States of America to said Boone D. Tillett, Jr., and said testimony was, in fact, false and respondent knew that said James L. Busbee and Rollie Arnold did not witness the said meeting, as aforesaid.
"4. The respondent, Harry E. King, did unlawfully solicit, conspire, combine and confederate with one H.P. Gordon, the then Sheriff of Polk County, Florida, to have James L. Busbee and Rollie Arnold testify falsely and corruptly, under lawful oath, before the Honorable William D. Hopkins, Acting State Attorney for the Tenth Judicial Circuit in and for Polk County, Florida; that they, the said James L. Busbee and Rollie Arnold, were present and witnessed a meeting on February 4, 1956, near Babson Park, Florida, between Respondent, Harry E. King, and one Boone D. Tillett, Jr., when the truth, in fact, respondent and said H.P. Gordon knew that the said James L. Busbee and the said Rollie Arnold were not, in fact, present, nor did they witness said meeting near Babson Park, Florida.
"5. That the respondent, Harry E. King, did on or about March 19, 1956, knowingly and wilfully testify falsely under oath before the grand jury of the Tenth Judicial Circuit, which false testimony is set forth as follows: * * *."
(We omit here the specific testimony.)
Thereafter, on March 23, 1964, respondent filed his answer and request for hearing. The Florida Bar designated as referee Honorable Victor O. Wehle, formerly a circuit judge of the sixth judicial circuit and now again a judge of said circuit. Hearing was held before Judge Wehle on May 27, 1964, and on August 25, 1964, his report as referee was filed. Said report is explicit and thorough, and we quote the substance thereof as follows:
"SUMMARY OF EVIDENCE
"James L. Busbee, formerly a Deputy Sheriff of Polk County, testified (Tr. pp. 13-40) that in 1956 at the suggestion of his superior Sheriff, Pat Gordon of Polk County, he had falsely testified before the State's Attorney and before the Grand Jury regarding his having seen Mr. King and Mr. Tillett at a certain orange grove near Babson Park, at which time, Mr. Tillett and Mr. King exchanged papers. Busbee had not been present at that meeting and had not seen the matters to which he testified. Mr. King knew that Busbee was going to so testify and knew that the testimony was false and had been concocted for the benefit of Mr. King.
"Certain other evidence regarding the matter was stipulated to by counsel for the parties, which evidence it is not necessary to recite here.

*400 "Earlier in the proceedings (Tr. pp. 2-13) Mr. King, through his attorney, Mr. Bedell, admitted the allegations of paragraphs 1 and 2 of the complaint; admitted that Busbee and Arnold testified falsely before the State's Attorney as alleged in paragraphs 3 and 4 of the complaint; admitted that King knew that they intended to so falsely testify and that he did not attempt to dissuade or prevent them; and admitted that the testimony given by King before the Grand Jury as set forth in paragraph 5 of the complaint was untrue.
"The respondent did not concede that he procured or solicited Busbee and Arnold to give the false testimony before the State Attorney (Tr. p. 4) nor that he solicited, conspired, etc. with Sheriff Gordon to procure Busbee and Arnold to falsely testify.
"With these stipulations and with the testimony of Mr. Busbee above outlined, the Bar rested its case.
"The respondent placed on the stand numerous character witnesses (Tr. pp. 40-126) and offered to place many more character witnesses on the stand, but the Bar through its counsel waived this and agreed that the letters attached to the transcript as exhibits No. 2(a) through 2(dd) be received in evidence.
"The respondent was then placed on the stand and made an apparently full disclosure of all the pertinent portions of his participation in the transactions resulting in these proceedings (Tr. pp. 126-168).
"The respondent's testimony can be summarized as follows:
"He had been a practicing attorney in Winter Haven, Polk County, Florida, since 1925. He had become interested in politics and was elected State Senator in Polk County in 1940 and was re-elected for three succeeding terms totaling sixteen years of service. In the 1955 session of the State Senate, he was the leading candidate for President of the 1957 Senate, having secured sufficient commitments to assure his election.
"For many years, Boon D. Tillett, an attorney of Polk County, had been antagonistic to the respondent. Tillett was elected to the House of Representatives of Polk County, serving in the 1955 session. He announced as a candidate against the respondent for State Senator in the primaries of 1956 and a bitter campaign was anticipated.
"Early in the compaign, Tillett approached the respondent and offered to withdraw in respondent's favor if the respondent would reimburse Tillett for $10,000.00 of campaign expenses. Respondent ultimately agreed to pay this $10,000.00 to eliminate Tillett as an opponent.
"At Tillett's suggestion, they met in the grove near Babson Park for the exchange of the money and for Tillett to deliver to the respondent a signed announcement of Tillett's withdrawal from the race. The exchange was made and the respondent thereafter released the announcement to the press, whereupon Tillett revealed that the whole thing had been a plant to attempt to establish the respondent as having bribed Tillett to withdraw from the race.
"The Sheriff of Polk County, active in Polk County politics apparently decided to protect the respondent by procuring two of the Sheriff's Deputies, Busbee and Arnold, to testify that the respondent was the one that tried to trap Tillett and that the two Deputy Sheriffs had assisted in the entrapment by secretly witnessing the meeting in the grove near Babson Park.
"These Deputies did so testify before the State Attorney while he was investigating the case, and before the Grand Jury which was investigating *401 the case and ultimately issued several indictments. The respondent knew these Deputies were going to so falsely testify, but in his overwhelming desire to be re-elected State Senator and become President of the Senate, did not attempt in any way to prevent this perjury. In addition, the respondent himself testified falsely before the State Attorney and before the Grand Jury regarding the Deputy Sheriffs' presence at the bribery scene.
"Respondent now makes no attempt to defend his conduct, but on the contrary confesses that he had misconducted himself as above set forth.
"The Bar offered no evidence as to any other occasions in which the respondent had ever been accused of misconduct as an attorney or otherwise, resting its case solely on the misconduct of the respondent in connection with the Tillett matter.
"Respondent humbly states that he has at all times in his practice of law, except for the Tillett occasion, properly conducted himself. His good record in this behalf was testified to by some twenty-three witnesses and similar testimony of many other witnesses was proffered by the respondent, and conceded by the Bar. Amongst those testifying to the high standard and good conduct of the respondent, both before and after the events complained of, were Circuit Judges Henry G. Stephenson (Tr. pp. 48-56) and William K. Love (Tr. pp. 63-67); Polk County Judge, Richard A. Bronson (Tr. pp. 101-103); D.H. Sloan, Jr., Circuit Clerk of Polk County from 1937 to 1964; Ray Clements, Tax Collector of Polk County since 1940, and a member of the Florida Bar since 1949 (Tr. pp. 107-109) and numerous lawyers practicing in Polk County.
"Amongst those who wrote letters of recommendation which were received in evidence were Glen Darty, State Attorney of the Tenth Circuit, Circuit Judge D.O. Rogers of the Tenth Circuit; and many other lawyers practicing in Polk County, including many of the senior and most highly respected members of the Bar, such as J. Hardin Peterson of Lakeland, Gordon Petteway of Lakeland, H.C. Crittenden of Winter Haven and Henry Jollay of Winter Haven.
"The gist of all the character testimony was to the effect that the respondent had at all times and in all matters (except the Tillett transaction) evidenced a high sense of responsibility and a high conception of legal ethics and had been one of the most highly respected and trusted members of the Polk County Bar for many years.
"As a result of the Tillett episode, the respondent was prosecuted and convicted, although ultimately all convictions were reversed. He never took the witness stand in any of the criminal trials and so did not further compound his perjury or subornation of prejury. Probably as a result of the Tillett episode, he was defeated in the election for State Senator and has never again held public office, his political future having been effectively ruined by the episode out of which these proceedings arose. Incidentally, he never received the return of the $10,000.00 bribery as Mr. Tillett managed to dispose of that. Mr. Tillett is now dead and consequently unable to testify in these proceedings.
"Some of the criminal proceedings involved in this matter appear in the following cases:
Gordon, et al. vs State of Florida [Fla.] 104 So.2d 524
Gordon vs State of Florida [Fla. App.] 119 So.2d 753
(certiorari denied [Fla.] 123 So.2d 349)
King vs State of Florida [Fla.App.] 134 So.2d 502

*402 King vs State of Florida [Fla.] 143 So.2d 458
"FINDINGS OF FACT
"After considering all of the pleadings, exhibits and evidence before me, I find that:
"1. The respondent did on or about March 19, 1956, knowingly and willfully testify falsely under oath before the Grand Jury of the Tenth Judicial Circuit, the false testimony set forth in paragraph 5 of the complaint.
"2. That the respondent knew that James L. Busbee and Rollie Arnold intended to commit perjury in testifying before the Acting State Attorney for the Tenth Judicial Circuit on or about February 29, 1956, and did not attempt to dissuade them or in any way to prevent them from so perjuring themselves for his benefit.
"RECOMMENDATION OF GUILT
"It is recommended that respondent be found guilty as charged in paragraph 5 of the complaint. It is recommended that he be found not guilty as to the matters charged in paragraphs 3 and 4 of the complaint as there is insufficient evidence to show that respondent "solicited, procured and caused" the perjury charged in paragraph 3 and no evidence at all as to the respondent's guilt under paragraph 4.
"RECOMMENDATION OF DISCIPLINE
"If this matter had been brought before me shortly after the acts of misconduct, I believe that I would have unhesitatingly recommended disbarment for a substantial period, if not permanently. However, the situation has been drastically changed by the lapse of time and the actions of the respondent in the interim. The misconduct took place over eight years ago. It is the only act of misconduct ever attributed to the respondent. Before and since that time, he has conducted himself in an exemplary fashion and earned and retained the confidence of the Bench and Bar of his circuit. Under these circumstances, to recommend either disbarment or suspension would accomplish no worthy objective. The respondent has been substantially punished by the ruining of his political future, the loss of the $10,000.00 bribe, the expense of defending himself in the criminal and disciplinary proceedings and in the humiliation and embarrassment he must have suffered over the years. His misconduct, gross as it was, nevertheless did not occur in his capacity as an attorney. His clients have not suffered as a result of his misconduct.
"Because of the widespread publicity resulting from the various criminal trials, I feel that some action should be taken publicly to show that the Bar does not condone the respondent's actions, even though his good conduct in recent years has made suspension or disbarment inadvisable. I, therefore, recommend a public reprimand."
In accordance with the provisions of Integration Rule 11.06(9) (b), 31 F.S.A. which provides: "Bar counsel and respondent may each file a statement in support of or in opposition to the findings and recommendations of the referee," a statement by counsel for The Florida Bar was filed with the Board of Governors in which Bar counsel concurred in the referee's recommendations concerning a public reprimand. The full statement of Bar counsel is as follows, viz.:
"The undersigned Bar counsel received respondent's statement in opposition to the Referee's recommendation of discipline on the 9th day of September, 1964.
"Bar counsel agrees with the recommendation of discipline as contained in *403 the Referee's report, but disagrees with the Referee's recommendation of guilt.
"It is felt that the testimony, evidence and stipulation of the parties conclusively showed that the respondent was guilty of subornation of perjury as charged in paragraph 3 of the complaint and guilty of conspiracy to commit perjury as charged in paragraph 4 of the complaint.
"The testimony conclusively showed that it was the respondent who took the two deputy sheriffs, Busbee and Arnold, to the orange grove, the scene of the alleged payoff, for the purpose of rehearsing or preparing their testimony before the Acting State Attorney on that same afternoon. (TR. pp. 20, 21, 22, 23, 24, 25, 34 and 35.)
"As Bar counsel and as a member of a profession that is generally considered an honorable one, I can think of very few violations more serious and involving moral turpitude than that of perjury, subornation of perjury and conspiracy to commit perjury. Lawyers, more than any other group of people, should be aware of the importance and sanctity of oaths before judicial bodies. There simply is no excuse or defense that could be offered on behalf of a lawyer of Mr. King's intelligence and experience after he willfully lied under oath before a duly constituted Grand Jury.
"Perhaps even more serious is his subornation of the perjury of the two deputy sheriffs, both of whom pled guilty to perjury, suffered public disgrace and humiliation and remained on probation for a period of time. Particularly when neither of these two deputies had anything to gain from their sworn testimony, whereas Mr. King was to have benefited from same.
"Bar counsel concurs in the Referee's recommendations concerning a public reprimand for the simple reason that it will at least in a small way help to put the record straight."
On December 1, 1964, the Board of Governors of The Florida Bar filed its judgment in this cause. It concurs with the findings of the referee but disagrees with his recommendation of discipline. It recommends that respondent be disbarred.
We have given careful consideration to the entire record in this cause and agree with the conclusions and recommendations of the referee. He is an able, experienced and highly regarded circuit judge. He heard the witnesses and was in a position to judge the sincerity of their testimony. The acts committed by respondent were extremely reprehensible, and we are convinced, as was the referee, that had this case been diligently initiated and prosecuted at the time of the commission of such acts we would have considered disbarment required. Had such occurred, and had respondent now nine years later petitioned for reinstatement and presented the record of exemplary conduct both before and after these acts that he has presented here, we would order reinstatement.
Disciplinary proceedings should be handled with dispatch. State ex rel. Florida Bar v. Oxford, Fla., 127 So.2d 107. Disciplinary or disbarment proceedings are solely for the purpose of purging the roll of legal practitioners of unworthy or disreputable members and not for the purpose of punishment for any malfeasance or dereliction of duty, and no fine, imprisonment or other punitive sentence can be imposed. State ex rel. Florida Bar v. Rubin, Fla., 142 So.2d 65.
Prior to these acts of respondent he was a successful lawyer and state senator. He was well regarded for his ability as well as his integrity. He had reached the point that his high goal of becoming president of the Florida Senate was committed to him by his fellow senators, and he only needed to be returned as senator by the electorate of his district to attain this ambition. Then *404 he became involved in political skulduggery with a ruthless political enemy who was determined to defeat him for the office. By his own aggression, or that of his antagonist, respondent bought this opponent out of the race for the sum of $10,000, but his opponent did not stay bought. He made public political capital of the incident, and then came a political tussle between the two as to who had set a trap for the other. Things went from bad to worse, and respondent saw his reelection and the presidency of the senate, which had seemed so secure to him, slipping from his grasp as a result of this altercation. No doubt in desperation, he went along with a false story and not only knowingly allowed others to testify to it but also did so himself.
Such actions cannot be condoned, particularly by a member of the legal profession. But we believe from the evidence presented, as apparently did the referee, that said actions were out of character for respondent. We do not condone them, and respondent does not. They are extremely reprehensible and damaging to the legal profession.
We are now confronted with the question of whether or not we should further damage respondent by taking away from him his profession of thirty-nine years' standing. He has suffered degradation and humiliation, the loss of reelection to the senate, as well as the presidency of the senate, the loss of $10,000 and the torment of being under criminal prosecution for a number of years. In spite of this, according to all of the evidence presented, he has at all times since that episode nine years ago conducted himself in an exemplary manner as a man and as a lawyer. The testimony reflects that since this occasion he has given his clients "gold plated" service in his legal representation of them. He has the support of every circuit judge of his circuit, as well as the bar of that area. In addition, other prominent and substantial non-lawyer citizens appeared in his behalf.
In spite of the respondent's gross misconduct of nine years ago, we believe that by his subsequent exemplary conduct he has earned the right to continue to serve his profession. We believe that he will at all times in the future conduct himself in such manner as to rectify, insofar as he can, the blemish that he has placed upon his record. If we did not think so, we would agree with the Board of Governors and sustain the order of disbarment. Under the circumstances heretofore related, however, we consider disbarment or suspension at this late date to be excessive. It is, thereupon,
Ordered that Harry E. King be and he is hereby publicly reprimanded for his acts aforesaid. Costs of these proceedings in the sum of $1,019.51 are assessed against respondent.
It is so ordered.
DREW, C.J., THORNAL, O'CONNELL and BARNS (Retired), JJ., and McCORD, Circuit Judge, concur.