358 So.2d 4 (1978)
THE FLORIDA BAR, Complainant,
v.
Hugh R. PAPY, Respondent.
No. 50810.
Supreme Court of Florida.
March 2, 1978.
Rehearing Denied May 11, 1978.
Alfred K. Frigola, Bar Counsel, Marathon and James P. Hollaway, Asst. Staff Counsel, Tallahassee, for The Florida Bar, complainant.
James E. Tribble, of Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami and Magill, Sevier & Reed, Miami, for respondent.
PER CURIAM.
This disciplinary proceeding by The Florida Bar against respondent, Hugh R. Papy, a member of The Florida Bar, is before us on *5 complaint of The Florida Bar, report of the referee and petition for review of respondent.
The Florida Bar filed a four-count complaint against respondent in June, 1974, charging in Count I that he accepted employment in a matter in which the exercise of his professional judgment on behalf of his client was or could reasonably have been affected by his own financial, business, property or personal interests, in that in June of 1971, while administrator of the estate of Robert Curry, which estate included a business known as Haven Roofing Company, he sold the assets of said company to Haven Roofing Company, Inc., in which he was an officer and incorporator and of which he and his wife subsequently became owners on July 31, 1971, without notifying the court supervising Curry's estate of his interest in Haven Roofing Company, Inc.
Count II charged that respondent commissioned an appraiser to appraise the assets of Haven Roofing Company for the Curry estate, and on the day scheduled for the appraisal, he hired one Hunter to load two trucks with material owned by Haven Roofing Company and to take it to Hunter's home until the appraisal was completed; and charged that, by directing that assets belonging to Haven Roofing Company be concealed from an appraiser of the property, he engaged in conduct involving dishonesty, fraud, deceit and misrepresentation.
Count III charged that respondent represented to Mr. Arroyo, who was responsible for the appraisal for all of the property in Curry's estate, that the independent appraisal of Haven Roofing Company was accurate and suitable to use in the overall appraisal and that he represented to the court, in a petition for order authorizing sale, that the assets of Haven Roofing Company were worth $8,920.35 when, in fact, he was aware that the true value of the property was much higher.
Count IV charged that he received at least $8,920.35 in his capacity as administrator of Curry's estate pursuant to a sale of the assets of Haven Roofing Company, that he never distributed this money to Curry's heirs or accounted for it, and that he never opened a separate account for Curry's estate but, instead, used the bank account of Haven Roofing Company.
Detailing the facts which he found to be supported by the evidence indicative of respondent's interest, which was not disclosed to the court or beneficiaries of Curry's estate, in Haven Roofing Company, Inc., beyond the status of accommodation endorser on the bank loan, as to Count I, the referee concluded:
"It is obvious that the interests of the Estate and the interests of Haven Roofing Company, Inc. were different in the transaction wherein the corporation bought the assets of the Estate business. The apparent complete exercise of control over the affairs of the corporation by the Respondent establishes his interest in the corporation. There is no evidence of consent by the beneficiaries or the Court or evidence of full disclosure to the beneficiaries or the Court. That the Respondent's personal judgment as Attorney for the Estate was affected by his own interest is evidenced by the facts,"
and found respondent guilty of violating Disciplinary Rules 5-101(A) and 5-104(A) of the Code of Professional Responsibility.
As to Count II the referee found that the unrefuted evidence shows that two truck-loads of material, valued at several thousand dollars, was removed from the business location of Haven Roofing Company for the entire working day on which the inventory and appraisal of the assets of Haven Roofing Company was made; that the only party to benefit by the reduced inventory was Haven Roofing Company, Inc., the prospective purchaser of which, respondent, was a fifty percent stockholder; that the same inventory valued at $8,920.35 in early 1971 was sold approximately a year and a half later for $10,000.00; that from the evidence, it could only be concluded that the total appraised value of the assets of Haven Roofing Company was deliberately reduced from its actual value both in quantity and worth, and that a convincing example *6 of respondent's dishonest conduct was the using of the assets of the estate business to acquire assets of J.R.B. Roofing; and found respondent guilty of violating Disciplinary Rules 1-102(A)(4), 7-101(A)(3), and Integration Rule 11.02(3)(a).
The referee found, as to Count III, that by the filing of the report of the appraisers by respondent into the court record and by the utilizing of the falsified figures as to the value of the estate in the accounting filed by respondent with the court, respondent used false evidence, made a false statement and concealed that which was required to be revealed; and that respondent falsified evidence either to the Circuit Court or to the hearing referee, thereby violating Disciplinary Rule 7-102(A)(3), (4), (5) and (6). Pertaining to the last count in the complaint, the referee found that respondent utilized money and material entrusted to him for a specific purpose for another purpose and that he had failed to make the required annual accountings, and recommends that respondent be found guilty of violating Disciplinary Rule 9-102(B)(1), (3) and (4) and Integration Rule 11.02(4).
Having carefully examined the record, we initially find that the findings of the referee are supported by clear and convincing evidence in the record before us for review.
Although we conclude that respondent's arguments on petition for review to this Court do not warrant reversal of the findings of the referee or dismissal of the complaint or any counts thereof, we do find sufficient mitigating circumstances so as to require reduction of the recommended disciplinary action to be taken against the respondent. Respondent contends, and it indisputably appears from the record, that the Bar failed to expeditiously prosecute the complaint against respondent. In fact, this cause has been replete with delays for the most part resultant from the Bar's activity or inactivity. The offenses upon which the complaint was based occurred in 1970 and 1971. The grievance hearings were held in late 1973 and early 1974, and the complaint of The Florida Bar was served in 1974. Final hearing was repeatedly postponed by the Bar and was not held until almost two years after the complaint had been filed.
Respondent was admitted to The Florida Bar in 1958 and has no record of any disciplinary activity prior to the present disciplinary proceedings. Furthermore, counsel for The Florida Bar and for respondent reported at the bar of this Court that there have been no subsequent disciplinary charges filed against respondent. This Court is committed to the proposition that disciplinary proceedings should be handled with dispatch, without any undue delay. The Florida Bar v. King, 174 So.2d 398 (Fla. 1965). This Court, in The Florida Bar v. Randolph, 238 So.2d 635 (Fla. 1970), emphasized that the responsibility for exercising diligence in the prosecution of disciplinary matters lies with the Bar. Opining that inordinate delays are unfair, unjust and may even be prejudicial to the accused attorney, this Court, in Randolph, supra, explicated:
"They permit violators to remain active in the practice. They dim the memories of witnesses. They mar effective and efficient enforcement of the canons of ethics. Worst of all, perhaps, they undermine the public confidence in the bar's announced determination to keep its own house in order... .
.....
"We have repeatedly announced that disciplinary proceedings should be handled with dispatch. In cases of flagrant delays, such as the matter sub judice, we have held that years of exposure to public scrutiny and criticism supplemented by clear evidence of rehabilitation, justify a terminal penalty that otherwise perhaps would be considered inadequate. [Cases cited.] During this unduly long period of investigation and prosecution, the accused lawyer is left roaming through the fields of Limbo where dwelt what Dante called `the praiseless and the blameless dead.' State v. Oxford, [127 So.2d 107 (Fla. 1961),] supra."
*7 Our ultimate judgment as to the disciplinary penalty to be imposed must not only be just to the public but also must be fair to the accused. Cf. State v. Bass, 106 So.2d 77 (Fla. 1958).
The totality of the circumstances in this cause, which include the inordinate delay caused by the Bar, no previous record of any disciplinary activity and his good behavior subsequent to the charged incident, mandate that the recommendation of disbarment by the referee be rejected and, in lieu of such penalty, respondent be, and is hereby, suspended for one year, beginning March 2, 1978.
Costs in the amount of $1,976.03 are assessed against respondent, which costs shall be paid before reinstatement.
It is so ordered.
OVERTON, C.J., and ENGLAND, HATCHETT and KARL, JJ., concur.
BOYD, J., dissents with an opinion, with which ADKINS, J., concurs.
BOYD, Justice, dissenting.
I respectfully dissent.
It is evident that respondent used poor professional and business judgment in his handling of this estate. It was obviously improper for him to become financially involved personally with an estate for which he was serving as attorney and legal representative. The record shows he did not profit by such efforts. On the contrary, there is convincing proof that he lost several thousand dollars of his own funds in the undertaking. There is no showing that he actually intended to profit personally from his efforts in the business. In his career as an attorney this is the only matter of his alleged professional misconduct to have come before this Court.
As stated in the majority opinion, the long passage of time between the alleged misconduct and consideration by the referee, and subsequent consideration by this Court, creates an awkward situation. Delay between the happening of events and the testimony thereof by witnesses naturally weakened their memories and diminished their effectiveness. Through financial loss and adverse publicity respondent has paid dearly for his exercise of poor judgment. There is not clear and convincing proof of his guilt, and I would therefore respectfully dissent to the finding of guilt and imposition of penalty.
ADKINS, J., concurs.