362 So.2d 12 (1978)
THE FLORIDA BAR, Complainant,
v.
Ellis RUBIN, Respondent.
Nos. 53329, 53110.
Supreme Court of Florida.
July 27, 1978.
Rehearing Denied October 2, 1978.
*13 Cecyl L. Pickle, Bar Counsel, Miami, Nicholas R. Friedman, Fort Lauderdale, and G. Lynn Kilpatrick, Tallahassee, Asst. Staff Counsel, for complainant.
Ellis Rubin, in pro per.
PER CURIAM.
This proceeding involves The Florida Bar's efforts to take disciplinary action against Ellis Rubin, a member of The Florida Bar,[1] and Rubin's attempt to prohibit the Bar's action on the ground that the Bar has failed to comply with various provisions of our disciplinary rules.[2] The Bar acknowledges some violations of the rules, but suggests that while we might mitigate any punishment that would otherwise be imposed by this Court, we should not by reason of its errors exonerate Rubin's conduct. The implications of the question thus presented bear a significance that reaches far beyond this single proceeding.
In 1972 and 1974, Rubin was formally charged with six violations of the Code of Professional Responsibility and the Integration Rule stemming from a variety of allegations that he had neglected clients' cases. In 1975, Rubin was charged with three additional Code violations. Hearings were in due course held on all of the Bar's charges. On October 29, 1976, referee Richard M. White filed his report with the Bar as to the first set of charges, finding Rubin guilty on three counts and recommending as punishment a public reprimand with two years probation. On May 9, 1977, referee Wesley G. Carey filed his report with the Bar on the other charges, finding Rubin guilty on two counts and recommending a private reprimand accompanied by six months probation.
On November 16, 1977, the Bar served Rubin with the reports of both referees, noted the approval of all findings by the Bar's Board of Governors, and stated that the Board had voted to waive confidentiality "in the limited manner provided for in Rule 11.12(4)." The letter further stated that the Board intended to waive confidentiality "in total pursuant to Rule 11.12(5)" unless Rubin petitioned within 15 days to maintain confidentiality. On November 23, well before the 15-day grace period had expired, the Bar issued a press release informing the public that Bar referees had found Rubin guilty of neglecting legal matters and that the Board of Governors intended to petition the Court for disbarment. This information made headlines in several Florida newspapers and was reported nationwide.[3]
On January 6, 1978  fourteen months after the Bar received referee White's report and eight months after it had received referee Carey's  the Bar filed both referees' reports with the Court. Rubin promptly sought to prohibit further action on the referees' reports pursuant to Rule 11.09(5), and shortly thereafter the Bar filed its petition for review of the referees' reports with its request for disbarment. After further *14 procedural skirmishing between the parties, we granted Rubin's motion to stay proceedings on the Bar's petition for review pending disposition of the prohibition matter, and we directed the Bar to show cause why all disciplinary action against Rubin should not be dismissed as a result of the Bar's apparent failure to comply with the mandates of the Integration Rule. The Bar's response, the various other pleadings which have been filed, and the parties' briefs have sufficiently framed the issues before us so as to warrant our dispensing with oral argument.[4] Our analysis of the four points raised by Rubin in support of this effort to prohibit our consideration of the referees' reports and the Bar's recommended discipline reveals that they are dispositive of the entire proceeding.
(1) Throughout the course of these proceedings, Rule 11.06(9)(b) has provided that any referee's report recommending a public reprimand shall be "filed promptly ... in the Supreme Court." Referee White's report, which recommended a public reprimand, was not filed with us until fourteen months after its receipt by the Bar. Rubin contends that this filing clearly was not prompt, and that the Bar's violation of the rule denies him due process.[5] The Bar attributes the delay to its internal procedures for processing disciplinary cases, the difficulty of reviewing the voluminous records in this case, and its desire to hold referee White's report for consolidation with referee Carey's report. While conceding that this case "could have been handled more expeditiously," the Bar argues that the delay here was not so inordinate as to justify dismissal of the charges, and that an appropriate judicial response might be to consider the delay as a factor going to mitigation of punishment.[6]
(2) Rule 11.06(9)(b) states that a report recommending a private reprimand, such as referee Carey's, "shall not be filed in the Supreme Court unless review is sought as hereinafter provided," and Rule 11.09(3)(b) directs that such a report "shall be promptly filed in the Supreme Court ... upon the filing of a petition for review." In the present case, the Bar submitted referee Carey's report to us before a petition for review was filed. Rubin contends that this action was obviously improper under the rules and that by proceeding in this way the Bar was able prematurely to breach the confidentiality which otherwise surrounds a private reprimand.[7]
(3) Rule 11.09(3)(a) provides that proceedings to review a referee's report, whether initiated by the Bar or by the affected attorney, "shall be commenced [by filing a petition for review with the Supreme Court] within 30 days after the mailing date of a letter ... serving a copy of the referee report on the respondent," and that "[t]he filing of such petition ... shall be jurisdictional as to a review to be procured as a matter of right." The Bar did not file its petition for review with the Court until 81 days after its November 16 letter to Rubin. Even the referees' reports were not filed until 51 days after the Bar's letter. Although the Bar now concedes that the rule's 30-day period commenced with the mailing of its letter to Rubin,[8] it suggests that the untimely filing of its petition does not preclude the Court from hearing the case on the merits. Rather, the Bar reads the rule to mean that an *15 untimely filing is only jurisdictional as to a review "as a matter of right," and that the Court may exercise its discretion to consider the merits where the interests of the public and the integrity of the Bar are at stake.
(4) Rules 11.12(4) and 11.12(5) relate to confidentiality. The first prohibits disclosure of "information concerning the pendency or status of an investigation or trial or other confidential matter" until the case is filed in the Court, "or unless authorized by the Board of Governors." The second, which authorizes additional disclosure with respect to certain matters, states that "prior to any waiver of confidentiality, the accused shall have 15 days to petition the full Board of Governors to maintain confidentiality... ." Notwithstanding that the Board's letter of November 16 purported to give Rubin 15 days to petition to maintain confidentiality, the Bar issued its press release seven days after its letter to Rubin and thereby precipitated widespread publicity that was both unfavorable to and unanticipated by him.[9] The Bar now claims that the waiver of confidentiality represented by its press release was not a total waiver under Rule 11.12(5), but rather a "limited" waiver under Rule 11.12(4).
Whether the Bar's violations of the Integration Rule warrant the dismissal of all charges, as Rubin urges, depends we believe upon the purpose for our procedural requirements, the severity of their breach, and the gravity of the consequences for the accused attorney whose rights are thereby abridged.
(a) The purpose for requiring a "prompt" filing of a recommendation for public reprimand obviously relates to the fact that the Court alone can issue a public reprimand,[10] and that once the report is prepared, the fact-finding, record-developing process is completed and the cause is ripe for final Court disposition. Whatever other objects the rule may seek to achieve, it obviously contemplates that the Bar should not be free to withhold a referee's report which it finds too lenient until additional cases can be developed against the affected attorney, in an effort to justify the more severe discipline which might be warranted by cumulative misconduct.[11] The Bar's violation of the prompt filing requirement in this case, to allow a second grievance proceeding against Rubin to mature, is directly antithetical to the spirit and intent of the rule. In addition, it has inflicted upon Rubin the "agonizing ordeal"[12] of having to live under a cloud of uncertainties, suspicions, and accusations for a period in excess of that which the rules were designed to tolerate.
(b) Our requirement that a referee's recommendation of private reprimand shall not be filed with the Court until either the Bar or the affected attorney seeks to have it reviewed relates both to the Bar's ability to issue a private reprimand without Court approval,[13] and to the preservation of confidentiality when that authority is exercised.[14] These rules contemplate that an attorney who has run the gauntlet of the grievance process and a trial by referee, and has emerged with only a private reprimand as recommended discipline, is entitled to be admonished for his errant conduct without the severe reputational damage which accompanies a public revelation of acts violative of his professional code. By *16 prematurely filing referee Carey's report with the Court in this case, the Bar inexcusably opened to public scrutiny facts which, although found to be violative of the code, had not been considered sufficiently egregious by referee Carey to warrant public disclosure.
(c) The purpose for the rule requiring the filing of a petition to review a referee's report within 30 days of sending the report to the affected attorney is readily apparent. After the attorney has been subjected to the grievance process and a trial, he is entitled to know (and required on his part to decide) whether the matter is concluded on the basis of the referee's recommendation or whether judicial review will follow. The 30-day requirement parallels the time limit for seeking judicial review of trial proceedings in the courts of Florida.[15] That review, though often characterized as "a matter of right", is constrained by the time requirement on the basis of being "jurisdictional".[16] Rule 11.09(3)(a) is similarly jurisdictional, though not as rigid. We accept the Bar's position that review after the 30-day time limitation should be available on a purely discretionary basis. We find no justification to exercise our discretion in this case, however, since there is no showing of good cause for the Bar's 51-day default.
(d) With respect to the effect of the Bar's press release on Rubin's right under Rule 11.12(5) to request that confidentiality be maintained, and the Bar's claim that its press release was merely a limited waiver of "information concerning the pendency or status of an investigation or trial or other confidential matter," we are satisfied that the press release in this case exceeds any reasonable interpretation of the terms "pendency or status" in the limited waiver provision. Indeed, it is difficult to conceive of a more detailed and damaging disclosure than that which the Bar made here under the guise of a "limited" waiver of confidentiality. Both the press release and the justification, we regret to say, are inexcusable.
The Bar has consistently demanded that attorneys turn "square corners" in the conduct of their affairs. An accused attorney has a right to demand no less of the Bar when it musters its resources to prosecute for attorney misconduct. We have previously indicated that we too will demand responsible prosecution of errant attorneys, and that we will hold the Bar accountable for any failure to do so.
"We have pointedly held that the responsibility for exercising diligence in the prosecution rests with the Bar. When it fails in this regard the penalizing incidents which the accused lawyer suffers from unjust delays, might well supplant more formal judgments as a form of discipline. This is so even though the record shows that the conduct of the lawyer merits discipline."[17]
The power to render ultimate judgment in attorney disciplinary proceedings rests solely with this Court,[18] and we have often stated that the exercise of that power should achieve a result which, in light of the circumstances of each case,[19] will best protect the interests of the public,[20] maintain the integrity of the Bar,[21] and ensure *17 fairness to the accused attorney.[22] The totality of circumstances in this case preponderates in favor of granting the relief sought by Rubin.
Accordingly, the Bar's petition for review is stricken, the referees' reports are quashed, and these disciplinary proceedings are hereby dismissed. The Florida Bar shall bear its own costs for these proceedings.[23]
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON and HATCHETT, JJ., concur.
NOTES
[1] We have original and exclusive jurisdiction over the discipline of attorneys in Florida pursuant to Article V, Section 15 of the Florida Constitution.
[2] By his application for relief, Rubin properly seeks to invoke our authority to issue extraordinary writs in attorney disciplinary proceedings. Fla.Bar Integr. Rule, art. XI, Rule 11.09(5). See also Ciravolo v. The Florida Bar, 361 So.2d 121, No. 50,249 (1978); The Florida Bar v. McCain, 330 So.2d 712 (Fla. 1976); Murrell v. The Florida Bar, 122 So.2d 169 (Fla. 1960).
[3] See note 9 below.
[4] Fla.App.R. 3.10(e), made applicable to bar disciplinary proceedings by Fla.Bar Integr. Rule, art. XI, Rule 11.09(6).
[5] See, e.g., The Florida Bar v. Fussell, 179 So.2d 852 (Fla. 1965). As to the applicability of federal substantive and procedural due process concepts to proceedings for revocation of an attorney's license, see Annotation, 98 L.Ed. 851 (1954).
[6] Delays in the Bar's prosecution, akin to a late filing of referees' reports, have occasionally influenced the Court to mitigate punishment. See, e.g., The Florida Bar v. Papy, 358 So.2d 4, No. 50,810 (1978); The Florida Bar v. Pritikin, 259 So.2d 138 (Fla. 1972); The Florida Bar v. Randolph, 238 So.2d 635 (Fla. 1970).
[7] Fla.Bar Integr. Rule, art. XI, Rule 11.12.
[8] The Bar initially asserted that the 30-day period began to run with the filing of the referees' reports and record with the Court, and so informed Rubin in its letter of November 16.
[9] Appended to Rubin's pleadings are reproductions of news articles published in the November 24th editions of The Miami Herald, The Fort Myers News-Press, The Pensacola News Journal, The Tampa Tribune, and The Los Angeles Times. In The Miami Herald, which ran the article under banner headlines on page one, Rubin was quoted as saying in response to the news that the Bar would seek his disbarment:

"I am, of course, shocked and stunned. I didn't get prior notice of this."
[10] Fla.Bar Integr. Rule, art. XI, Rules 11.06(9)(c)(i) and 11.10(2).
[11] The Court will, of course, tend to deal more severely with cumulative misconduct than with isolated misconduct. See State ex rel. Florida Bar v. Murrell, 74 So.2d 221, 223 (Fla. 1954).
[12] The Florida Bar v. Randolph, 238 So.2d 635, 638 (Fla. 1970).
[13] Fla.Bar Integr. Rule, art. XI, Rule 11.06(9)(c)(i).
[14] Fla.Bar Integr. Rule, art. XI, Rule 11.06(12).
[15] Fla.R.App.P. 9.110(b) (1977); Fla.App.Rule 3.2(b) (1962).
[16] See Williams v. State, 324 So.2d 74 (Fla. 1975).
[17] The Florida Bar v. Randolph, 238 So.2d 635, 639 (Fla. 1970). See also The Florida Bar v. McCain, 361 So.2d 700, at 705 (Fla. 1978) ("After all, The Florida Bar acts for and is an agency of this Court. When the child falters the parent shall correct.").
[18] See, e.g., The Florida Bar v. McCain, 330 So.2d 712 (Fla. 1976); The Florida Bar v. Wagner, 212 So.2d 770 (Fla. 1968); The Florida Bar v. Abramson, 199 So.2d 457 (Fla. 1967).
[19] The Florida Bar v. Scott, 197 So.2d 518 (Fla. 1967).
[20] See, e.g., The Florida Bar v. Blalock, 325 So.2d 401 (Fla. 1976); The Florida Bar v. Riccardi, 264 So.2d 5 (Fla. 1972); The Florida Bar v. Beaver, 259 So.2d 143 (Fla. 1972).
[21] In re The Florida Bar, 301 So.2d 448 (Fla. 1974).
[22] The Florida Bar v. Thomson, 271 So.2d 758 (Fla. 1972); State ex rel. The Florida Bar v. Ruskin, 126 So.2d 142 (Fla. 1961); State ex rel. The Florida Bar v. Bass, 106 So.2d 77 (Fla. 1958).
[23] See The Florida Bar v. McCain, 361 So.2d 700, at 707 (Fla. 1978).