ENGLAND, Justice,
concurring.
The attorneys who are here protesting the Bar’s proposed $50 dues increase have focused our attention on an issue critical to this controversy but infrequently discussed in public — whether The Florida Bar should function under a republican form of government with elected representatives, as is presently the case, or whether it should be operated under the autocratic authority of this Court. This issue underlies the pleas of the protestants that we reject the recommendation of the elected board of the Bar for a variety of policy and evidentiary reasons. I concur in approving the board’s recommendation because I believe the decision on the fundamental issue of governance was made in years past, and the protestants suggest no compelling reason why autocracy should now supplant democracy in the Bar.
The concerns of the protestants with “fat in the budget” of The Florida Bar, and with a misallocation of priorities, are arguments properly addressed to the board of governors through every Florida lawyer’s elected representatives in the judicial circuits of the state.[1] We have provided the mechanism to elect board members and we established elaborate procedures to assure openness and responsibility in the budget preparation process. Under our rules, a committee of The Florida Bar is obliged to prepare a tentative budget for the forthcoming fiscal year which is made available to all members of The Florida Bar, by publication, for commentary and criticism.[2] The budget committee is required to receive and hear all comments at a public meeting,[3] following which a proposed budget is prepared for submission to the full board.[4] The proposed budget is then published in the Bar Journal, together with notice of a *1366 meeting to be held on a specific date to consider and adopt a final budget.[5]
If members of The Florida Bar do not avail themselves of the processes we have created to voice their concerns with the level and direction of Bar expenditures, or if having done so their positions are rejected, this Court cannot be expected to override the deliberative judgment of the board based solely on the entreaties of those aggrieved. Members’ supervision of the Bar is tantamount to the superintendence of the people over their legislative and congressional delegates. If those delegates do not reflect the views of the majority of the governed, the electoral process is essentially the only available means by which to effect change.
The role of the Supreme Court in the budget process must be limited not only by the procedures we have created for direct control by the membership of the Bar, but as well by the practicalities of Bar governance. Although we must approve any increase in the dues “cap”, we have delegated to the board, and to the membership of the Bar through its ratification or rejection of any dues increase, the responsibility to adopt a budget that is suitable for the priorities which the organized Bar deems essential to the discharge of its assigned duties. Our responsibility when confronted with a dues increase, it seems to me, is limited to assuring that the purposes proposed by the board for new monies are within the scope of the Bar’s responsibility as the agent of this Court to improve the administration of justice in Florida. Clearly, the board’s objectives with respect to the $50 dues increase which is now sought are within that ambit — indeed, 95% of the dues increase will be allocated to a responsibility which this Court has persistently urged the Bar to undertake more vigorously and more expeditiously.[6] Our only other role with respect to the financial operations of the Bar is a post-expenditure audit review (a function we share with the membership at large), to assure that the .funds which were budgeted have been spent and accounted for properly.[7] Beyond these two limited functions, the organized Bar in Florida is largely self-governing in financial matters, as fully as a democratic society with a republican form of government.
The members of the board were well aware of the dissatisfaction which their proposed dues increase would engender. They now face voter response to the same extent that Florida legislators face the response of the voters when they adopt a tax increase. That is extraneous to this proceeding, however. Nothing brought to us by the protestants suggests that the board acted without regard to the interests of the public and its membership, or that it.proceeded in violation of the rules of procedure established for the budget process. Mere disagreement with the details and breadth of the board’s budget cannot be a basis for Court intercession. More significantly, any dissatisfaction with the dues increase itself can be expressed directly and unequivocally by the vote of the membership at the annual convention.[8]
For these reasons, I join, in approving a $50 increase in the dues “cap”, subject to membership approval or rejection at The Florida Bar Convention under the revised voting procedures prescribed in the majority opinion.
OVERTON, C. J., and SUNDBERG, J., concur.

. See Fla.Bar Integr. Rule, art. III.

. Fla.Bar Integr. Rule, art. IX, § 2.

. Id. at § 3.

. Id. at § 4.

. Id. at §§ 5, 6.

. The Florida Bar v. Papy, 358 So.2d 4, No. 50,810 (Fla. opin. filed March 2, 1978); The Florida Bar v. Randolph, 238 So.2d 635 (Fla.1970); The Florida Bar v. King, 174 So.2d 398 (Fla.1965); State ex rel. The Florida Bar v. Oxford, 127 So.2d 107 (Fla.1960).

. Fla.Bar Integr. Rule, art. IX, § 12.

. It is against the possibility of a rejected budget that we require an alternative budget to be developed at the present level of Bar income. See Fla.Bar Integr. Rule, art. IX, § 7.