In the Matter of Dudley R. WILLIAMS, A Member of the Bar of the District of Columbia Court of Appeals, Respondent.

No. M–111–82.

District of Columbia Court of Appeals.

Argued Feb. 4, 1986.
Decided July 30, 1986.

Michael S. Frisch, Asst. Bar Counsel, with whom Thomas H. Henderson, Jr., Bar Counsel, Washington, D.C., was on brief, for Office of Bar Counsel.

Terrance G. Reed, with whom David N. Webster, Washington, D.C., was on brief, for respondent.

Joan L. Goldfrank, Washington, D.C., for Bd. on Professional Responsibility.

Before MACK, TERRY and ROGERS, Associate Judges.

PER CURIAM:

The Board on Professional Responsibility ("the Board") was established to promote the highest standards of professional conduct among members of the bar of this court. It dismissed a disciplinary proceeding against respondent Dudley R. Williams on the sole ground that he had not been afforded a "speedy trial" of the charges against him. Because the license to practice law in the District of Columbia is a continuing proclamation by this court that the holder is fit to do so, we regard as improper the dismissal of formal charges against respondent due only to a delay in prosecution. We remand for the Board to provide us with its findings and recommendation as to what discipline, if any, should be imposed.

I

This court created the Board on Professional Responsibility in the exercise of our inherent power over members of the legal profession. D.C.Bar R. Preamble, XI § 4. We assigned to the Office of Bar Counsel the responsibility for investigating and prosecuting complaints against District of Columbia attorneys. *Id.* R. XI §§ 4(3)(b), 6, & 7. Unless the allegation of misconduct has no apparent merit, Bar Counsel institutes formal disciplinary proceedings, and prosecutes the case initially before a three-member Hearing Committee appointed by the Board. *Id.* R. XI §§ 4(3), 5,

6(1)(d), & 7(1)–(2). The Hearing Committee submits to the Board a report containing its findings and recommendation, together with the full record of the proceedings. *Id.* R. XI § 7(2). The Board is empowered, normally after hearing argument, to affirm or modify the recommendation of the Hearing Committee, remand the matter for further proceedings, or dismiss the petition. *Id.* R. XI § 7(3). Unless the petition is remanded or dismissed, or the matter is concluded by reprimand, the Board must promptly submit its findings and recommendation, together with the entire record, to this court. *Id.* We hear argument, if respondent requests it, and enter the final order in the matter. *Id.* Our policy is to accept the Board's findings of fact, unless unsupported by substantial evidence, and to adopt the Board's recommendation unless it would foster a tendency toward inconsistent dispositions for comparable conduct, or would otherwise be unwarranted. *Id.; see, e.g., In re Hines,* 482 A.2d 378, 386 (D.C.1984) (per curiam); *In re Roundtree,* 467 A.2d 143, 147 (D.C.1983) (per curiam); *In re Thorup,* 461 A.2d 1018, 1019–20 (D.C.1983) (per curiam); *In re Haupt,* 422 A.2d 768, 771 (D.C.1980) (per curiam); *In re Smith,* 403 A.2d 296, 303 (D.C.1979).

In 1979 and 1980, Bar Counsel instituted formal charges against respondent, alleging numerous violations of the rules of professional conduct. D.C.Bar R. X, Appendix A. These allegations eventually resulted in the Board issuing a finding of misconduct and recommending disbarment. Because respondent had not been afforded adequate due process protections, this court declined to impose the recommended sanction. *In re Williams,* 464 A.2d 115 (D.C.1983) (per curiam) (*Williams I*). Instead, on July 14, 1983, we remanded the case back to the Board for new proceedings with all attendant procedural safeguards. *Id.* at 119.

On January 6, 1985, Bar Counsel responded to our remand in *Williams I* by refiling the identical allegations of misconduct. This time, after a hearing which afforded respondent the due process pro-

tections which were absent from the earlier proceedings, the Hearing Committee found a lack of clear and convincing evidence on the charges with respect to four out of the five aggrieved clients. Those charges were dismissed. The remaining client had retained respondent to act as settlement agent for the sale of real property. On the allegations arising out of this transaction, the Hearing Committee found respondent guilty of neglect, D.C.Bar R. Appendix A DR 6–101(A)(3), intentional failure to seek the lawful objectives of his client, *id.* DR 7–101(A)(1), and failure to promptly pay funds to the parties entitled, *id.* DR 9–103(B)(4). The Hearing Committee recommended that respondent be publicly censured for his misconduct.

In recommending this sanction, the Hearing Committee rejected respondent's argument that the proceedings against him should be dismissed for want of a speedy trial. Respondent based his motion on the delay of almost eighteen months between our remand in *Williams I* and Bar Counsel's eventual refiling of the identical charges. On review, the Board declined to adopt the Hearing Committee's recommendation, accepted respondent's speedy trial argument, and dismissed the disciplinary proceedings. The Board made no evaluation of the Hearing Committee's finding of misconduct, nor did it suggest an appropriate sanction. Bar Counsel petitioned this court for review of the Board's determination, arguing that a speedy trial violation, without more, is insufficient to warrant dismissal of formal disciplinary charges against an attorney.

## II

▮▮ Our rules on attorney misconduct are necessarily stringent:

*Grounds for discipline.* The license to practice law in the District of Columbia is a continuing proclamation by th[is]

Court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and as an officer of the Court. It is the duty of every recipient of that privilege to conduct himself [or herself] at all times, both professionally and personally, in conformity with the standards imposed upon members of the Bar as conditions for the privilege to practice law.

D.C.Bar R. XI § 2. The same section provides, without exception, that "[a]cts or omissions by an attorney ... which violate the attorney's oath of office or the Code of Professional Responsibility ... shall constitute misconduct and shall be grounds for discipline...." *Id.*

In order to enforce these principles, we created the Board. Its function is to help us ensure that members of the bar aspire to the highest standards of ethical conduct and thus continue to earn their license to practice law. We gave the Board the power and the duty "[t]o consider and investigate any alleged ground for discipline or alleged incapacity of any attorney called to its attention, or upon its own motion, and to take such action with respect thereto as shall be appropriate to effect the purposes of these disciplinary rules." *Id.* § 4(3)(a). We must decide in this case, therefore, whether the speedy trial policy adopted by the Board will further the purposes of our system of attorney discipline.[1]

The disciplinary rules protect clients from wayward attorneys, maintain the integrity and competence of the legal profession, and save the judicial process from corruption. *See District of Columbia Bar v. Kleindienst,* 345 A.2d 146, 147 (D.C. 1975) (en banc) (per curiam). We are reminded that the disciplinary rules, in contrast to the primarily aspirational ethical considerations also set forth in the rules of

---

1. The Board expressly limited its holding to cover only the period after this court remands disciplinary charges for further proceedings; the Board also grounded its result entirely upon policy considerations, and declined to consider respondent's argument that he had a constitutional Sixth Amendment right to speedy trial. As our discussion makes clear, neither of these limitations affects our conclusion that dismissal of the charges was improper.

professional responsibility, are mandatory in character: "The Disciplinary Rules state the minimum level of conduct below which *no lawyer* can fall without being subject to disciplinary action. Within the framework of fair trial, the Disciplinary Rules should be *uniformly applied to all lawyers*, regardless of the nature of their professional activities." D.C.Bar R. Appendix A, Preliminary Statement (emphasis added).

In dismissing the charges of misconduct against respondent, the Board formulated a policy which borrows from the principles that infuse the Sixth Amendment right of criminal defendants to a speedy trial. *See Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Branch v. United States,* 372 A.2d 998 (D.C.1977). The Board's reasoning was supported, to some extent, by our previous description of disciplinary proceedings as "quasi-criminal in nature." *Williams I, supra,* 464 A.2d at 118. The accusatorial quality of attorney discipline proceedings, coupled with their grave consequences, demand the provision of due process safeguards. *In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1968); *Williams I, supra,* 464 A.2d at 118–19; *In re Thorup, supra,* 432 A.2d at 1225. But it does not follow from this that an attorney charged with misconduct must receive *every* protection to which a criminal defendant would be entitled. *Ex parte Wall,* 107 U.S. 265, 288, 2 S.Ct. 569, 588, 27 L.Ed. 552 (1883); *Office of the Disciplinary Counsel v. Campbell,* 345 A.2d 616, 620–21 (Pa.1975); *see also In re Echeles,* 430 F.2d 347, 349–50 (7th Cir. 1970). While we do not discount the weight of the Board's argument to the contrary, we nonetheless regard as inappropriate its dismissal of disciplinary charges solely on account of a speedy trial violation.

A disciplinary sanction differs from a criminal conviction. Although both protect the public, they do so in different ways. Most importantly, an attorney is in a continuing position of trust toward clients, the courts, and society in general. A member of the bar has accepted the onerous responsibility of participating in the administration of justice. We grant the license to practice law as a privilege, not as a right, and we do so only on the strict condition that the attorney aspire to the highest standards of ethical conduct. Consequently, "[t]he purpose of a disciplinary proceeding is to question the continued fitness of a lawyer to practice his [or her] profession." *District of Columbia Bar v. Kleindienst, supra,* 345 A.2d at 147. In the words of the Supreme Court, upon review of a decision to disbar:

> The proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practise in them.... [W]hen [a clear case of misconduct] is shown to exist, the courts ought not to hesitate, from sympathy for the individual, to protect themselves from scandal and contempt, and the public from prejudice, by removing grossly improper persons from participation in the administration of the laws.

*Ex parte Wall, supra,* 107 U.S. at 288, 2 S.Ct. at 588–89.

Any betrayal of the trust which the attorney is sworn to keep demands appropriate discipline; a delay in prosecution, without more, cannot override this necessity. The contrary conclusion would mean that, when licensing applicants, we would engage in a form of deceit: our endorsement of an unqualified attorney would belie our simultaneous assertion that attorneys possess the integrity and competence which they must constantly demonstrate in order to earn the privilege of practicing law in the District of Columbia. Speedy trial principles, which in criminal cases are a constitutionally required curb on the abuse of government power, in the disciplinary system take second place to other societal interests. We conclude, for these reasons, that an undue delay in prosecution is not in itself a proper ground for dismissal of charges of attorney misconduct.

Other courts agree. As the Supreme Court of Oregon has explained:

> It ought to be made clear ... that the primary purpose of professional disciplinary proceedings is to protect the public. The punishment of the offending member of the profession is indeed a serious matter, but it is incidental to the protection of the public. If the conduct of a member of the bar disqualifies him [or her] from the practice of law, it would not be in the public interest to dismiss the disciplinary proceedings for no reason other than the Bar's failure to prosecute them with the proper dispatch.

*In re Weinstein,* 254 Or. 392, 394, 459 P.2d 548, 549 (1969) (per curiam), *cert. denied,* 398 U.S. 903, 90 S.Ct. 1689, 26 L.Ed.2d 61 (1970); *see also In re O'Hara,* 63 A.D.2d 500, 501, 408 N.Y.S.2d 70, 71 (1978) (per curiam); *In re Oxman,* 437 A.2d 1169, 1172 (Pa.1981).[2]

We might hold differently if respondent had shown that the undue delay impaired his defense. A delay coupled with actual prejudice could result in a due process violation, in which case we would be unable to agree with a finding that misconduct had actually been shown. *In re Oxman, supra,* 437 A.2d at 1172–73; *see also Caldwell v. State Bar,* 13 Cal.3d 488, 496, 119 Cal.Rptr. 217, 223, 531 P.2d 785, 791 (1975).

But that would be a different case. Here, the Hearing Committee specifically

concluded that respondent had suffered no prejudice due to the delay.[3] It noted that respondent had not identified any lost witnesses; factual disputes arising as a result of diminished memories were resolved in respondent's favor, along with other issues concerning the credibility of the witnesses. Upon review, the Board did not disturb the Hearing Committee's finding that no prejudice had occurred. Instead, in dismissing the charges, it accurately pointed out that prejudice is not an essential element of a speedy trial violation in a criminal case. *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973) (per curiam). In *Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. at 2193, the Supreme Court identified three types of possible prejudice. One of these is oppressive pretrial incarceration, which never occurs in disciplinary proceedings; another is anxiety, which we hold insufficient to warrant dismissal; in marked contrast to criminal cases, we regard as indispensable the third type of prejudice—impairment of the defense—if attorney disciplinary proceedings are to be dismissed for undue delay in prosecution. No such prejudice was shown in this case. We therefore reject the Board's newly announced speedy trial policy as an inappropriate method of effecting the purposes of the disciplinary rules. D.C.Bar R. XI § 4(3)(a).[4]

---

**2.** We note with interest the Board's rule that "[i]nvestigations, petitions, and the application of sanctions are not subject to any statute of limitations." D.C.App.Bd. on Professional Responsibility R. 14 § 1, *reprinted in* DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY DISCIPLINARY DIGEST (1986). A statute of limitations, which prevents undue delay in bringing charges, is of course distinct from the right to speedy trial, which ensures that charges are expeditiously prosecuted once filed. The Board's refusal to set a limitations period in disciplinary proceedings, however, is justified for precisely the reasons that render speedy trial principles also inapposite. *See, e.g., In re Weiner,* 120 Ariz. 349, 353, 586 P.2d 194, 198 (1978); *In re Teichner,* 75 Ill.2d 88, 93–96, 25 Ill.Dec. 609, 610–11, 387 N.E.2d 265, 266–67, *cert. denied,* 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 172 (1979); *Louisiana State Bar Ass'n v. Edwards,*

387 So.2d 1137, 1139–40 (La.1980); *Attorney Grievance Comm'n v. Engerman,* 289 Md. 330, 345–46, 424 A.2d 362, 370 (1981).

**3.** The record provides no support for respondent's efforts to take issue with this finding.

**4.** The newly announced speedy trial policy fares no better under other provisions of our rules establishing a disciplinary system and creating the Board. The policy to dismiss does not qualify as a "rule [ ] of procedure not inconsistent with the Rules promulgated by this Court." D.C.Bar R. XI § 4(3)(i). Nor is the dismissal permissible as a "recommended disposition," even if it could be considered such, because "it would foster a tendency towards inconsistent dispositions for comparable conduct or otherwise would be unwarranted." *Id.* R. XI § 7(3).

### III

We decide only that dismissal for no reason other than a delay in prosecution is inappropriate when allegations of attorney misconduct remain unresolved. We do not condone the delay that occurred. Bar Counsel unconvincingly attempts to justify a period of almost eighteen months between our remand in *Williams I* and the refiling of identical charges. It is noteworthy that, even after this extended delay, the refiled charges with respect to all but one of the five aggrieved clients were found to be unsupported by clear and convincing evidence. The Hearing Committee justly described the delay as "inexcusable."

We trust that this lapse will not be repeated. Tardy prosecution of potential offenders does a disservice to the attorney, to the affected clients, to the courts, and to society in general. An undue delay in prosecuting charges casts an unjustified shadow over an innocent attorney; it allows a guilty one to practice with impunity; it dims memories and so distorts the truth-finding process; it threatens to put the integrity of the courts at the mercy of an unethical practitioner; it does nothing to deter other members of the bar from misconduct; and it erodes public confidence in the bar's announced intention to keep its own house in order. *See The Florida Bar v. Randolph,* 238 So.2d 635, 638 (Fla.1970); *Louisiana Bar Association v. Edwards, supra* note 2, 387 So.2d at 1139. The damaging effects of delay have been described in more picturesque language by the Florida Supreme Court: "During [an] unduly long period of investigation and prosecution, the accused lawyer is left roaming through the fields of Limbo where dwelt what Dante called 'the praiseless and the blameless dead.'" *The Florida Bar v. Randolph, supra,* 238 So.2d at 638–39.

In an unfortunate situation such as the present, where an undue delay did occur, but without impairing respondent's defense, we approve the Hearing Committee's alternative to the drastic remedy of dismissal. It treated the lapse of time as a possible mitigating factor. *Arden v. State Bar,* 52 Cal.2d 310, 321, 341 P.2d 6, 13 (1959) (en banc) (per curiam); *The Florida Bar v. Papy,* 358 So.2d 4, 7 (1978) (per curiam); *Attorney Grievance Commission v. Howard,* 282 Md. 515, 523–24, 385 A.2d 1191, 1196 (1978) (per curiam). The Hearing Committee recognized that extended disciplinary proceedings may carry with them adverse psychological and, sometimes, economic consequences. Consideration of the delay in mitigation is a particularly suitable approach if the attorney has ethically practiced law during the period in question. *The Florida Bar v. Papy, supra,* 358 So.2d at 7; *Attorney Grievance Commission v. Howard, supra,* 282 Md. at 523–24, 385 A.2d at 1196.

Without condoning the delay which took place in this case, we hold that dismissal of disciplinary proceedings is an inappropriate remedy when allegations of attorney misconduct remain unresolved. We remand to the Board for findings and a recommendation as to what sanction, if any, should be imposed.

*So ordered.*