Jeffrey M. FORD, Plaintiff,

v.

Traci M. TAIT et al., Defendants.

No. CIV. A. 00–2687 (RMU).

United States District Court,
District of Columbia.

Sept. 25, 2001.

Jeffrey M. Ford, College Park, MD, Pro se.

Robert L. Rogers, Wiley, Rein & Fielding, Washington, DC, for Defendant.

## MEMORANDUM OPINION

URBINA, District Judge.

### GRANTING THE DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

This attorney-disciplinary action comes before the court on the defendants' motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim on which relief may be granted. Jeffrey M. Ford ("the plaintiff" or "Mr. Ford") brings this civil-rights suit under 42 U.S.C. § 1983. Mr. Ford, an attorney proceeding *pro se*, alleges that Bar Counsel Joyce Peters, Assistant Bar Counsel Traci Tait, and Executive Attorney for the Board of Professional Responsibility Elizabeth Branda (collectively, "the defendants"), deprived him of procedural due process by: (1) delaying the resolution of disciplinary charges brought against him; (2) improperly notifying Maryland's Attorney Grievance Commission of disciplinary proceedings before the adjudication of the charges; and (3) administering the D.C. Rules of Professional Conduct in a manner that violated Mr. Ford's rights to substantive and procedural due process. Mr. Ford also claims that the Bar Counsel filed charges against him with insufficient information.

In addition to the due-process allegations, Mr. Ford claims that the Bar Counsel violated his equal-protection rights, abused the attorney disciplinary process, negligently supervised its investigating attorney, and defamed him. Lastly, Mr. Ford claims that as a result of the defendants' actions, he has suffered emotional

distress and closed his law practice. Accordingly, Mr. Ford seeks declaratory relief, a permanent injunction blocking the defendants from reporting on the status of his disciplinary proceedings, and damages.

The defendants now move to dismiss, arguing that the court lacks subject-matter jurisdiction and that the plaintiff has failed to state a claim on which relief may be granted. The court will not grant the defendants' motion on these grounds, but on the alternative argument raised by the defendants. In short, the court will apply the doctrine of equitable restraint and will grant the defendants' motion to dismiss on that ground.

## II. BACKGROUND

### A. The Parties

The plaintiff, Mr. Ford has been an attorney member of the District of Columbia Bar since 1983. *See* First Am. Compl. ("Compl.") ¶ 1. Defendant District of Columbia Bar is an organization of attorneys licensed to practice law by the D.C. Court of Appeals. *See* Mot. to Dis. at 2. The D.C. Court of Appeals established the Board of Professional Responsibility of the District of Columbia Court of Appeals ("the Board"). *See id.* The D.C. Court of Appeals appoints nine members to the Board, which adopts rules and procedures, investigates allegations of attorney misconduct, appoints Hearing Committees to conduct hearings and to submit findings, and submits recommendations to the D.C. Court of Appeals. *See id.* at 3. As the Executive Attorney for the Board, Elizabeth J. Branda supervises staff and assigns an attorney member of the Hearing Committee as a contact member to review the Bar Counsel's recommendations for dismissals, informal admonitions, and formal proceedings. *See* Compl. ¶ 5.

The Board appoints the Bar Counsel to act as the "disciplinary arm of the D.C. Courts." *See Anderson v. D.C. Public Defender Service,* 756 F.Supp. 28, 31 (D.D.C. 1991) (citing D.C. Rules Ann. Bar Rule XI.), *vacated in part on other grounds,* 980 F.2d 746 (D.C.Cir.1992). As Bar Counsel, Joyce E. Peters is responsible for investigating alleged attorney misconduct and prosecuting disciplinary matters before the Hearing Committee, the Board, and the D.C. Court of Appeals. *See* Mot. to Dis. at 3–4. Traci M. Tait is the Assistant Bar Counsel who investigated the allegations of professional misconduct involving Mr. Ford. *See* Compl. ¶ 7.

### B. Investigations and Procedures

The Office of the Bar Counsel is responsible for processing complaints of attorney misconduct. *See* Compl. ¶ 6. After the Bar Counsel investigates allegations of misconduct, it initiates formal disciplinary proceedings and prosecutes the case before a three-member Hearing Committee appointed by the Board and in the presence of the attorney charged with misconduct, i.e., the respondent. *See In the Matter of Dudley R. Williams,* 513 A.2d 793, 794 (D.C.1986). The respondent may choose to retain counsel. The Hearing Committee then submits findings, with the record of the proceedings, to the Board of Professional Responsibility. *See id.* The Board has the option to schedule oral arguments and can affirm, modify, remand, or dismiss the charges. The Board then submits its recommendation and the full record to the D.C. Court of Appeals. Upon request, the Court of Appeals may also hear oral argument. *See id.* Lastly, the Court of Appeals issues a final order. *See id.* The D.C. Court of Appeals will adopt the Board's recommendation, unless it rules that the recommendation is unwarranted or unsupported by "substantial evidence." *See id.*

An attorney may file an exception with the Board to the Hearing Committee's recommendation of disciplinary action. *See* Mot. to Dis. at 4. In addition, if the attorney disagrees with the Board's findings, the attorney may file an exception to the D.C. Court of Appeals. *See id.*

### C. Mr. Ford's Alleged Ethical Violations

In March 1996, Mr. Ford filed an ethical complaint against attorney Valerie Bailey with the Office of Bar Counsel. In this complaint, Mr. Ford alleged that after his association with Ms. Bailey's law practice ended, she retained client files and client escrow funds belonging to Mr. Ford. *See* Compl. ¶ 8. The Bar Counsel conducted an informal inquiry into these charges. *See id.* ¶ 10. The Bar Counsel did not issue formal charges against Ms. Bailey, but did bring formal charges against Mr. Ford, based on Ms. Bailey's allegations of improper client representation. *See* Pl.'s Opp'n to Defs.' Mot. to Dis. ("Pl.'s Opp'n"), Ex. 3. The Bar Counsel then issued an informal admonition against Mr. Ford based on the following District of Columbia Rules of Professional Conduct:

1.1(a): a lawyer must provide competent representation to a client;

1.1(b): a lawyer must serve a client with skill and care commensurate with that generally afforded to clients by other lawyers in similar matters;

7.1(a): a lawyer shall not make false or misleading communication about himself or his services; and

7.5(a): a lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1.

Specifically, Ms. Tait, the Assistant Bar Counsel, found that Mr. Ford incorrectly listed an asset in a probate petition, thereby creating the possibility of tax and title problems in the future. *See* Compl. ¶ 20. She also found that Mr. Ford did not properly complete the abbreviated probate order and incorrectly identified his client in the notice of appointment to creditors and unknown heirs. *See* Pl.'s Opp'n, Ex. 7. Moreover, Ms. Tait concluded that Mr. Ford misinformed the Probate Court about which newspaper he published the notice in. *See id.* The Bar Counsel also brought charges against Mr. Ford for misleading clients and using Ms. Bailey's letterhead to give his clients the impression that he was associated with Ms. Bailey's law firm. *See* Compl. ¶ 21. Mr. Ford claims that Ms. Tait did not submit her findings to a Contact Member, as required by Rule 2.12, before issuing an informal admonition. *See id.* ¶ 22.

Disagreeing with the Bar Counsel's findings, Mr. Ford requested a formal hearing in October 1996. *See id.* ¶ 23. In March 1997, the Bar Counsel filed a Specification of Charges, describing the alleged violations. *See id.* ¶ 24. The Hearing Committee set a hearing date for June 6, 1997. While proceedings were pending, the Bar Counsel notified the Maryland Attorney Grievance Commission of the pending disciplinary proceedings. *See* Pl.'s Opp'n, Ex. 14.

After several continuances, the hearing occurred on April 2, 1998.[1] *See* Compl.

---

1. Originally, the Hearing Committee scheduled a hearing for June 6, 1997. *See* Compl. ¶ 27. On May 15, 1997, the Bar Counsel requested a continuance because Ms. Bailey was scheduled to undergo surgery and therefore could not testify. *See id.* ¶ 28. In December 1997, after Mr. Ford asked about the status of the hearing, the Hearing Committee ordered the Bar Counsel to state when it could proceed. *See id.* ¶ 31. The Bar Counsel explained that Ms. Bailey's unavailability caused the delay, and that it would not be ready to proceed until March 1998. *See* Compl. ¶ 32. Mr. Ford filed an opposition to the extension of time, but the Hearing Committee set a hearing date for April 2, 1998.

¶ 37. The Hearing Committee heard the testimony of three witnesses and reviewed nine exhibits submitted by the defendants in support of the charges against Mr. Ford. *See id.* ¶ 38. A probate law expert testified that the erroneous listing of the probate asset was a "substantial error." *See* Hearing Comm. Tr. at 159–60. Furthermore, the expert substantiated the Bar Counsel's claim that Mr. Ford erroneously filed the probate order with the Probate Court. *See id.*

After the Bar Counsel rested her case, Nancy Crisman, the Hearing Committee Chairwoman, stated that:

> [T]he Committee is frankly not impressed with the case against Mr. Ford particularly on Charges A, B and C. There is some concern on Charge D, and I think that while it is correct that we can't dismiss any charges that we would like you to focus in on the last charge, the questions of using firm letterhead and other indications that you worked for the firm when you didn't in your testimony.

*Id.* at 185–86. Mr. Ford then testified on his own behalf.

One year later, the Hearing Committee issued a recommendation of informal sanctions against Mr. Ford for incompetent representation, a charge that Mr. Ford contends he was prohibited from defending. *See* Hearing Comm. Recommendation to Sanction ("Recommendation") at 4–6; Compl. ¶ 50. The Hearing Committee found insufficient evidence to sanction Mr. Ford on the remaining charges. *See* Recommendation at 8.

Disagreeing with the Hearing Committee's findings, Mr. Ford filed exceptions with the Board. The Board heard oral arguments in October 2000 and had not reached a decision by November 2000 when Mr. Ford filed this action.

## III. ANALYSIS

### A. Legal Standard for Motion to Dismiss

In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court must accept all the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g., Pitney Bowes v. United States Postal Serv.,* 27 F.Supp.2d 15, 19 (D.D.C.1998) (Urbina, J.). On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. *See District of Columbia Retirement Bd. v. United States,* 657 F.Supp. 428, 431 (D.D.C.1987). In evaluating whether subject-matter jurisdiction exists, the court must accept all uncontroverted, well-pleaded facts as true and attribute all reasonable inferences to the plaintiffs. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overturned on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *See, e.g., Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990).

Moreover, the court need not limit itself to the allegations of the complaint. *See Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds,*

*See id.* ¶ 34. In March 1998, Mr. Ford's counsel requested a continuance, but the Assistant Bar Counsel refused. *See id.* ¶ 36. Apparently, Mr. Ford's counsel resigned between the end of March and the beginning of April. One day before the hearing, Mr. Ford sought a continuance to hire counsel, *see id.* ¶ 37, *see also* Pl.'s Opp'n, Ex. 13, but the Hearing Committee denied this request. *See* Compl. ¶ 37.

482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Rather, the court may consider such materials outside the pleadings as it deems appropriate to determine whether it has jurisdiction in the case. *See Herbert v. National Academy of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992).

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests. *See* FED. R. CIV. P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. *See* FED. R. CIV. P. 12(b)(6); *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683, *overruled on other grounds by Harlow,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396. Thus, the court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Atchinson v. District of Columbia,* 73 F.3d 418, 422 (D.C.Cir.1996). Moreover, the court should draw all reasonable inferences in the nonmovant's favor. *See Judicial Watch, Inc. v. Clinton,* 880 F.Supp. 1, 7 (D.D.C.1995).

## B. The *Younger* Doctrine

In *Younger v. Harris,* the Supreme Court articulated a doctrine based on principles of comity and federalism. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Court defined this notion of "federalism" as:

[A] system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.* at 44, 91 S.Ct. 746.

To further these goals, when an issue of subject-matter jurisdiction over a state proceeding arises, a federal court must apply a three-part test to determine whether it should dismiss the case based on the *Younger* doctrine: "first, a federal court may dismiss a federal claim only when there are ongoing state proceedings that are judicial in nature; second, the state proceedings must implicate important state interests; third, the proceedings must afford adequate opportunity in which to raise the federal claims." *Hoai v. Sun Ref. & Mtkg. Co.,* 866 F.2d 1515, 1517 (D.C.Cir.1989) (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). The federal court must also consider whether the case at bar falls into one of the exceptions, such as a showing of bad faith or harassment by the defendant, or exceptional circumstances that would warrant federal jurisdiction. *See Younger,* 401 U.S. at 53–54, 91 S.Ct. 746. An example of an exceptional circumstance is a statute that "flagrantly and patently" violates a constitutional provision. *See id.* at 53, 91 S.Ct. 746 (quoting *Watson v. Buck,* 313 U.S. 387, 402, 61 S.Ct. 962, 85 L.Ed. 1416 (1941)).

While *Younger* involved a criminal proceeding, the Supreme Court has extended this equitable-restraint doctrine on several occasions.[2] First, the court applied the

---

**2.** The court notes that the D.C. Circuit has distinguished the doctrines of "abstention" and "equitable restraint." The D.C. Circuit has instructed the district court that it should refer to the *Younger* doctrine as a doctrine of "equitable restraint," by which a federal case

*Younger* doctrine to cases in which a state government is a party in state civil litigation. *See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (holding that the federal district court should have applied the *Younger* doctrine and dismissed an adult movie theater owner's lawsuit challenging a state obscenity statute on First Amendment grounds after the state instituted a civil nuisance proceeding against the theater owner). Next, the court extended the doctrine to civil proceedings in which the state government is not a party, but which involve important state interests. *See Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). In *Juidice,* a case involving private litigants in which a state court held several people in contempt for refusing to comply with subpoenas, the Court pointed to the state's interest in its contempt proceedings, which are "at the core of the administration of a State's judicial system." *See id.* at 335, 97 S.Ct. 1211. In *Pennzoil Co. v. Texaco, Inc.,* the Supreme Court underscored the notion that *Younger* applied in cases involving deference to state courts. *See* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

But the doctrine is not overly broad. In *New Orleans Public Service, Inc. v. Council of City of New Orleans (NOPSI),* the Court refused to apply *Younger* to all civil litigation: "it has never been suggested that *Younger* requires abstention and deference to a state judicial proceeding reviewing legislative or executive action." *See* 491 U.S. 350, 370, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). Viewing this array of case law, one commentator has noted that *"NOPSI* offers little guidance as to what types of situations warrant abstention and which do not; there are no criteria, express or implied, as to when state interests are sufficiently important as to warrant *Younger* abstention in private civil litigation." *See* Erwin Chemerinsky, *Federal Jurisdiction* 743 (2d ed.1997).

The Supreme Court has made it clear, however, that *Younger* does apply to certain pending state administrative proceedings. For example, in a case involving disciplinary proceedings against a New Jersey lawyer, the Court upheld the federal district court's decision to dismiss the case. *See Middlesex,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). "The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." *Id.* at 432, 102 S.Ct. 2515. The Court considered the bar disciplinary actions "judicial" because the New Jersey Supreme Court supervised and ultimately reviewed the actions and because these actions were closely related to the functioning of the state's judicial system. *See id.* at 434–36, 102 S.Ct. 2515. "The State of New Jersey has an *extremely important interest* in maintaining and assuring the professional conduct of the attorneys it licenses." *Id.* at 434, 102 S.Ct. 2515 (emphasis added).

### C. Application of the *Younger* doctrine

■ As a preliminary matter, parties who seek to invoke the *Younger* equitable-restraint doctrine must raise it themselves

---

is dismissed based on notions of comity and federalism. *See Bridges v. Kelly,* 84 F.3d 470, 475 n. 7 (D.C.Cir.1996). In contrast, the *Pullman* abstention doctrine contemplates a stay of a federal action to allow a state court to resolve pertinent issues of local law. *See Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

The idea is to give the state court an opportunity to resolve pertinent issues of local law that may "eliminate or materially alter the constitutional issue presented." *See Ohio Bureau of Employment Servs. v. Hodory,* 431 U.S. 471, 481, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977). In this case, as noted *infra, Younger's* equitable-restraint doctrine applies.

since the court cannot invoke the doctrine *sua sponte*. *See Swisher v. Brady*, 438 U.S. 204, 213 & n. 11, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978). In the instant case, although the defendants do not offer *Younger* as one of their principal arguments, they do raise it in a footnote as an alternative ground for dismissal. *See* Mot. to Dis. at 5 n. 3. On a separate point, the plaintiff fails to argue that any exceptions to the *Younger* doctrine apply in this case. Indeed, the plaintiff fails to address the defendants' *Younger* arguments entirely. In addition, although a defendant may waive the doctrine by voluntarily choosing to submit to a federal forum, *see Ohio Bureau of Employment Servs. v. Hodory*, 431 U.S. 471, 480, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977), the court determines that the defendants did not effect a waiver in this case.

■ Before applying the *Younger* doctrine, the court must address one more issue. That is, although the D.C. Circuit has discussed the *Younger* equitable-restraint doctrine, it has never decided expressly whether the District of Columbia qualifies as a "state" for *Younger* purposes. *See Bridges*, 84 F.3d at 476 n. 8. Rather, the D.C. Circuit has assumed that *Younger* applies to the District of Columbia, but has found it inapplicable to that particular case.[3] *See id.* On this matter of first impression, the court holds that the District of Columbia qualifies as a state for *Younger* purposes. Indeed, "courts have generally indicated that the District of Columbia resembles a state within the framework of a comity analysis." *Jenkins v. Washington Convention Ctr.*, 59 F.Supp.2d 78, 81 (D.D.C.1999) (citing *Silverman v.*

*Barry*, 727 F.2d 1121, 1123, n. 4 (D.C.Cir. 1984)). This court sees no good policy reason why the courts in the District of Columbia should not be given the same degree of deference that is given to state courts.

The court now employs the three-pronged test to determine whether the *Younger* doctrine applies to this case.

### 1. Ongoing State Proceedings that are Judicial in Nature

■ The first question under *Younger* is whether there is an ongoing state proceeding that is judicial in nature. "[A] judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The Supreme Court emphasized in *Feldman* that the nature and effect of the proceeding determines whether an inquiry is judicial, not its form. *See id.* at 478, 103 S.Ct. 1303. For example, a proceeding that deliberates "an actual controversy over an issue, not a desire for an abstract declaration of the law," and determines rights as they presently exist, is judicial in nature. *See id.* (quoting *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738, 819, 6 L.Ed. 204 (1824) (citations omitted)).

In *Middlesex*, the Supreme Court held that New Jersey's attorney disciplinary proceedings constituted an ongoing state judicial proceeding. *See Middlesex*, 457 U.S. at 433, 102 S.Ct. 2515. The Court was persuaded that New Jersey's disciplinary proceedings were judicial in nature by a provision in its state constitution granting the New Jersey Supreme Court au-

---

**3.** The D.C. Circuit has not resolved whether the District of Columbia qualifies as a state, but has explained that "[i]nstead, every time the question has arisen, we have assumed that the doctrine applies to the District and none-theless determined, in light of the facts of each particular case, that *Younger* abstention has not been appropriate." *See Bridges*, 84 F.3d at 476 n. 8.

thority over its bar. *See id.* In addition, the New Jersey Supreme Court perceived the Ethics Committee as "the arm of the court in performing the function of receiving and investigating complaints and holding hearings," while New Jersey case law emphasized the judicial character of bar disciplinary proceedings. *See id.*

Similarly, in this case, the D.C. Court of Appeals has authority over the D.C. Bar. *See In the Matter of Dudley R. Williams,* 513 A.2d at 793 (stating that the D.C. Court of Appeals "created the Board of Professional Responsibility in the exercise of [its] inherent power over members of the legal profession."). In accordance with that authority, the D.C. Court of Appeals appoints the Board of Professional Responsibility of the D.C. Court of Appeals to investigate allegations of attorney misconduct, to appoint Hearing Committees to conduct hearings and submit findings, and to make recommendations to the D.C. Court of Appeals. *See id.* The Board then appoints the Bar Counsel to act as the "disciplinary arm of the D.C. Courts." *See Anderson,* 756 F.Supp. at 31 (citing D.C. Rules Ann. Bar Rule XI). Attorneys can retain counsel for these hearings, conduct discovery, cross-examine witnesses, and present evidence in their defense. *See* D.C. Rules Ann. Bar Rule XI. Furthermore, the D.C. Court of Appeals views these proceedings as "adversary, adjudicatory proceedings." *See In re Benjamin,* 698 A.2d 434, 439 (D.C.1997) (quoting *In re Thorup,* 432 A.2d 1221, 1225 (D.C.1981)).

■ In this case, the state judicial proceeding is also ongoing. The plaintiff filed exceptions to the Bar Counsel's informal admonition to the Board of Professional Responsibility, which has yet to render a decision. Accordingly, the case has yet to reach the D.C. Court of Appeals. When the remaining prongs of the *Younger* test are satisfied, "federal courts should refrain from enjoining lawyer disciplinary proceedings initiated by state ethics committees if the proceedings are within the appellate jurisdiction of the appropriate state Supreme Court." 32A AM. JUR. 2D *Federal Courts* § 1303 (1995); *see also Middlesex,* 457 U.S. at 431–32, 102 S.Ct. 2515. The court concludes that there is an ongoing state proceeding that is judicial in nature.

### 2. Important State Interests

■ *Younger's* second inquiry centers on whether an important state interest is at stake. The Supreme Court has declared that a state's interest in regulating its licensed attorneys constitutes one such interest. *See Middlesex,* 457 U.S. at 434, 102 S.Ct. 2515. "The judiciary as well as the public is dependent upon professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice." *See id.* The District of Columbia shares that same interest in this case.

### 3. Adequate Opportunity to Raise Federal Claims

■ Because the first two prongs are satisfied, the court must assess whether the plaintiff will have a fair and adequate opportunity to raise his federal claims in the state proceeding. The D.C. Circuit applies the *Younger* equitable-restraint doctrine to section 1983 claims only if the state proceeding can provide the full relief prayed for in the federal claims. *See Bridges,* 84 F.3d at 477; *see also* Kenneth M. Lesch, *Aggressive Application of Federal Jurisdiction under the Younger Abstention Doctrine to Section 1983 Damage Claims,* 65 Geo. Wash. L.Rev. 645, 651 (1997). When the state proceeding is unable to provide the maximum relief sought, then dismissing or staying the proceeding

is inappropriate. *See Bridges,* 84 F.3d at 477. The D.C. Circuit's approach is based on the policy that federal courts should refrain from exercising jurisdiction only in exceptional cases. *See Bridges,* 84 F.3d at 475–76.

In *Bridges,* the D.C. Circuit reversed the district court's dismissal on abstention grounds. *See* 84 F.3d at 478. In *Bridges,* a former attorney for the District of Columbia's Department of Administrative Services filed suit against the District for retaliation under section 1983, the Veterans Reemployment Act, and the U.S. Constitution, seeking reinstatement and damages. *See id.* at 471. The district court dismissed the complaint on the basis of *Younger* because the plaintiff appealed his termination to the District's Office of Employee Appeals before filing in federal court. *See id.* Therefore, the district court reasoned that the plaintiff could raise his federal issues on appeal to the District's Office of Employee Appeals. *See id.*

The D.C. Circuit reversed, holding that *Younger* does not apply in a situation when the "appellant has raised federal claims and sought relief that are beyond the compass of the D.C. administrative/judicial system." *Id.* at 41, 91 S.Ct. 746. Although the D.C. Circuit found that the Office of Employee Appeals process was judicial in nature and that the District of Columbia had an important interest in controlling the size of its workforce, it ruled that dismissal was improper. *See id.* at 476–77. Specifically, there was no indication that the Office of Employee Appeals could award damages or that the D.C. Court of Appeals could hear claims not

brought before the Office of Employee Appeals. *See id.* at 477.

■■■ By contrast, in this case, there is no barrier to the D.C. Court of Appeals hearing the plaintiff's constitutional claims. As the Supreme Court emphasized, "[m]inimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex,* 457 U.S. at 431, 102 S.Ct. 2515. District of Columbia case law demonstrates that the D.C. Court of Appeals can hear federal claims arising from attorney disciplinary proceedings. For example, the D.C. Court of Appeals recently considered an attorney's allegation that the Hearing Committee, the Board of Professional Responsibility, and the Bar Counsel violated his due process rights by denying a request for a continuance and conducting a hearing in his absence. *See In re Chris H. Asher,* 772 A.2d 1161, 1165 (D.C.2001). In another case involving a reciprocal disciplinary proceeding, the D.C. Court of Appeals heard an argument that the disciplining state violated the attorney's right to free speech. *See In re Benjamin,* 698 A.2d 434, 441 (D.C.1997). Moreover, the defendants note that the plaintiff will have an opportunity to raise these claims before the D.C. Court of Appeals.[4] *See* Mot. to Dis. at 18.

Lastly, the Supreme Court has held that in cases in which a plaintiff seeks equitable relief, a federal court has the option of staying, dismissing, or remanding the case to state court. *See Quackenbush v. Allstate Insurance Co.,* 517 U.S. 706, 721, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). By contrast, the Supreme Court has not held that federal courts have as many options when

---

4. In their motion to dismiss, the defendants contend that the plaintiff is attempting to collaterally attack the informal admonition. They continue to say that "[t]his cannot be the proper subject of this Court's jurisdiction to

address substantive constitutional issues. The Plaintiff will yet have his chance in court. This Court, however, is not the right court for that chance." Mot. to Dis. at 18.

a plaintiff is seeking legal damages. *See id.* Rather, "while we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions." *Id.* Accordingly, it is worth noting a crucial distinction between *Quackenbush* and the instant case. In *Quackenbush,* the case arrived in federal court after the defendant removed the case from state court based on *diversity* grounds. *See id.* at 709, 116 S.Ct. 1712. Having filed a common-law breach-of-contract and tort action, the plaintiff sought legal damages. *See id.* In contrast, this plaintiff premises jurisdiction on federal-question jurisdiction, pursuant to 28 U.S.C. § 1331, and alleges that the defendants have deprived him of rights, privileges, and immunities guaranteed to him by the United States Constitution. *See* Compl. at 2. This plaintiff seeks primarily equitable relief. The court thus concludes that the *Quackenbush* caveat instructing district courts not to dismiss cases revolving around legal damages does not apply in this case.

Accordingly, the court dismisses the action on *Younger* equitable-restraint grounds. The court therefore need not reach the merits of the defendants' motion to dismiss for failure to state a claim on which relief may be granted, their judicial-immunity argument, or their assertion that the court lacks jurisdiction under the *Rooker–Feldman* doctrine.

## IV.  CONCLUSION

For all these reasons, the court grants the defendants' motion to dismiss. An order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued on this 25 day of September, 2001.